

1  CENTER FOR DISABILITY ACCESS, LLP
2  MARK D. POTTER, ESQ., SBN 166317
   RUSSELL C. HANDY, ESQ., SBN 195058
   100 East San Marcos Blvd., Suite 400
3  San Marcos, CA 92069-2988
   (760) 480-4162; Fax (760) 480-4170
4

5  Attorney for Plaintiff, SAMI YONAN

6

7

8

9

10

UNITED STATES DISTRICT COURT

CENTRAL DISTRCIT OF CALIFORNIA

11  SAMI YONAN,                                    ) Case No.: CV07-0531 CJC (SHXx)
                                                   )
12              Plaintiff,                         ) **MEMORANDUM OF POINTS AND**
                                                   ) **AUTHORITIES IN SUPPORT OF**
13      v.                                         ) **PLAINTIFF'S MOTION FOR**
                                                   ) **PARTIAL SUMMARY JUDGMENT**
14  TURNPIKE LODGES, A Limited                     )
    Partnership, and DOES 1 through 100,           ) DATE: February 11, 2008
15  inclusive,                                     ) TIME: 1:30 p.m.
                                                   ) CTRM: 9B
16              Defendants.                        )
                                                   ) HONORABLE CORMAC J. CARNEY
17                                                 )
                                                   )
18  _____)

19  ///

20  ///

21  ///

22

23

24

25

26

27

28

Points and Authorities re: Partial Summary Judgment                    Page 1

1

## TABLE OF CONTENTS

CAPTION PAGE.................................................................................i

TABLE OF CONTENTS.......................................................................ii

TABLE OF AUTHORITIES .................................................................iii

I.  RELEVANT FACTS......................................................................1

II.  LEGAL STANDARD ...................................................................4

III. DISCUSSION ................................................................................5

  A.  General Rule..............................................................................5

  B.  Plaintiff's ADA Cause of Action.............................................6

    1.  Plaintiff is Disabled........................................................7

    2.  Defendant is a Public Accommodation ...........................7

    3.  Defendant's Facilities Have Barriers ..............................7

       (a)  Parking Lot Violations ......................................10

       (b)  Path of Travel Violations ..................................11

       (c)  Restroom Violations...........................................11

    4.  Defendant's Duty to Remove Barriers ..........................15

    5.  Plaintiff's Actual Knowledge of Barriers......................17

  C.  Plaintiff's State Causes of Action...........................................18

IV.  CONCLUSION............................................................................21

**EXHIBITS**

Declaration of Sami Yonan........................................................1

Photos.........................................................................................2

Receipt........................................................................................3

Interrogatory Responses.............................................................4

Requests for Admission Responses ...........................................5

Consent Decree ..........................................................................6

## TABLE OF AUTHORITIES

**STATUTES:**

Federal Rule of Civil Procedure 56 ...............................................................7, 8

42 U.S.C. § 12102(A) ..................................................................................10

42 U.S.C. § 12181(7)(A).............................................................................11

42 U.S.C. § 12181(9) ..................................................................................14

42 U.S.C. § 12182(a) ................................................................................9,10

42 U.S.C. § 12182(b)(2)(A)(iv) ..........................................................10,11, 13

42 U.S.C. § 12186(b) ..................................................................................11

42 U.S.C. § 12188(a) ..................................................................................10

42 U.S.C. § 12188(a)(1)...............................................................................16

ADAAG § 4.13.5 ........................................................................................12

ADAAG § 4.17.6 ........................................................................................13

ADAAG § 4.21 ...........................................................................................13

ADAAG 9.1.2 .............................................................................................12

California Civil Code § 51(f)...........................................................................9

California Civil Code § 54.1(d) .......................................................................9

**CASES:**

Access Now, Inc. v. South Florida Stadium Corp.,

   161 F.Supp.2d 1357 (S.D. Fla. 2001) ........................................................12

Anderson v. Liberty Lobby Inc.,

   477 U.S. 242 (1986).................................................................................8

Celotex Corp. v. Catrett,

   477 U.S. 317 (1986).................................................................................8

Colorado Cross Disability Coalition v. Hermanson Family Ltd. P'ship,

   264 F.3d 999 (10th Cir. 2001) ..................................................................14

D'Lil v. Anaheim Hotel Partnership,

1    43 Fed. Appx. 96 (9th Cir. 2002)..................................................................12

2  D'Lil v. Stardust Vacation Club,

3    2001 WL 1825832 (E.D. Cal.)....................................................................12

4  Gathright-Dietrich v. Atlanta Landmarks, Inc.,

5    452 F.3d 1269 (11th Cir. 2006) ....................................................................14

6  Helen L. v. DiDario,

7    46 F.3d 325 (3rd Cir. 1995) ............................................................................9

8  Independent Living Resources v. Oregon Arena Corp.,

9    982 F. Supp. 698 (D. Org. 1997) ....................................................................9

10  Pacific Fruit Express Co. v. Akron, Canton & Youngstown

11    Railroad Co. 524 F.2d 1025 (9th Cir. 1975).................................................8

12  Parr v. L&L Drive-Inn Restaurant,

13    96 F.Supp.2d 1065 (D. Hawaii)..............................................................12,16

14  Wilson v. Haria and Gogri Corp.,

15    479 F.Supp.2d 1127 (E.D. Cal. 2007) ..........................................................14

16  Wilson v. Pier 1 Imports (US), Inc.

17    439 F.Supp.2d 1054 (E.D.Cal.,2006) ......................................................12,15

18  Wyatt v. Ralphs Grocery Co.

19    65 Fed.Appx. 589 (9th Cir. 2003)................................................................12

20  ///

21  ///

22  ///

23

24

25

26

27

28

# I. RELEVANT FACTS

The plaintiff is a 46-year old certified public accountant with severe mobility impairments. Exhibit 1 (Yonan Dec.), paragraph 2. Due to a catastrophic vehicle accident in 1994, he has been a paraplegic and unable to walk for the last 14 years. Id. In the first week of November 2005, Mr. Yonan called the Ramada Limited Inn located at 4770 Calle Real in Santa Barbara, California to inquire about renting a room. Id. at paragraph 3. Mr. Yonan informed the Ramada Inn receptionist that he was in a wheelchair and needed a wheelchair accessible room. Id. at paragraph 3. He asked whether the Ramada had wheelchair accessible rooms and was told that they had a room that was large enough to accommodate a wheelchair user and, in fact, that a women in a scooter had used it. Id. at paragraph 3. Mr. Yonan reserved that room. Id. at paragraph 3. On November 10, 2005, Mr. Yonan checked in with the hotel and was given his reserved room, which room was numbered 158. Id. at paragraph 4. His receipt is attached as exhibit 3. Id.

Mr. Yonan's experience was simply horrendous. Id. at paragraph 5. His room was far from wheelchair accessible. Id. Most egregiously, he could not even get his wheelchair into the bathroom. Id. The clear passage width leading into his bathroom measured only 26.5 inches in width. Exhibit 1 (Yonan Dec), paragraph 5; Exhibit 2 (Photographs), pp.3-4. Even had he been able to get his wheelchair into the bathroom, he would not have been able to use it because there were no grab bars at the toilet and the toilet was located in an alcove that measured 23 inches in width. Exhibit 1 (Yonan Dec), paragraph 6; Exhibit 2 (Photographs), pp.8-9. Additionally, the shower was not wheelchair accessible, i.e., it was not a roll-in shower and did not have any shower seat. Exhibit 1 (Yonan Dec), paragraph 7; Exhibit 2 (Photographs), pp.5-6. Mr. Yonan was unable to clean himself, use the restroom, shower or otherwise use the bathroom and, in fact, ended up defecating upon himself. Exhibit 1 (Yonan Dec), paragraph 7. To say that he was incensed by his experience is an understatement. Mr. Yonan is not a

1  litigious person. This is only the second ADA lawsuit that he has ever filed.

2

3  Plaintiff propounded written discovery on the defendant and was informed that

4  the Ramada has been completely remodeled in response to a settlement agreement

5  brought by another disabled plaintiff, Hollyn D'Lil.[1]  Pursuant to a settlement

6  agreement, the defendant installed four wheelchair accessible rooms and undertook a

7  significant variety of other modifications to make the Ramada wheelchair accessible.

8  As discussed more fully below, Plaintiff propounded written interrogatory asking

9  whether Defendant contended that installing a wheelchair accessible room was not

10  readily achievable and, if so, what facts supported this contention. In response, the

11  Defendant did not so contend and, in fact, stated that any information pertaining to

12  whether the removal of access barriers is readily achievable was irrelevant given the

13  massive remodel. Exhibit 4 (Interrogatories and Responses).

14

15  In short, this case is amenable to partial summary judgment on the issue of

16  liability. There is no genuine issue regarding plaintiff's disability, the fact that the

17  Ramada was not wheelchair accessible, that it can and has undertaken substantial

18  modifications to ensure wheelchair accessibility. Plaintiff respectfully requests the

19  court consider the points and authorities discussed herein and enter partial summary

20  judgment on the issue of liability, leaving the measure of damages for trial.

21

22  **II.   LEGAL STANDARD**

23  The Federal Rules authorize judgment as to "all or any part of" a claim upon a

24  showing that there is no genuine issue of material fact as that particular claim. Fed. R.

25  Civ. P. 56. A motion under Rule 56 "pierces" the pleadings and puts the opponent to

26

27  ---

28  [1] Mr. Yonan has never met of Hollyn D'Lil and, in fact, had never heard of her before his lawsuit was filed. Exhibit 1 (Yonan Dec), paragraph 9.

1  the test of affirmatively coming forward with sufficient evidence in support of its

2  claims to create a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325

3  (1986).

> Summary judgment procedure is properly regarded not as a disfavored
> procedural shortcut, but rather as an integral part of the Federal Rules as a
> whole, which are designed to secure the just, speedy, and inexpensive
> determination of every action.

4
5
6

7  Id., at 327.  Whether an issue is "material" is determined by the "substantive law's

8  identification of what facts are critical and what facts are irrelevant." Anderson v.

9  Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  Whether a dispute is "genuine" is a

10  determination for the judge, who must ask whether a reasonable jury could return a

11  verdict for the non-moving party. Id. at 248-250.

12

13  Rule 56 of the Federal Rules of Civil Procedure specifically provides that

14  "summary judgment may be rendered on liability alone, even if there is a genuine issue

15  as to the amount of damages."  Fed. R. Civ. P. 56(d)(2).  As one prominent

16  commentator noted:

17
18  (a) [14:38] **Frequent application:** Resolution of the liability issue before
19  trial is perhaps the most common example of the "partial summary
20  judgment" procedure. [See *Pacific Fruit Express Co. v. Akron, Canton &*
21  *Youngstown Railroad Co.* (9th Cir. 1975) 524 F2d 1025]

22  The Rutters Guide, CAL. FED.: CIV. PRO. BEFORE TRIAL (2007) § 14:38.  In the

23  present case, there can be no genuine dispute over the facts of the case and those facts

24  inform the court and the parties that it would be a waste of judicial resources for the

25  issue of liability to proceed to trial.  There is no genuine issue of material fact and this

26  court should grant the plaintiff's motion.

27

28

## III. DISCUSSION

A.    General Rule

There are three operative causes of action in this case:  (1) the Americans with Disabilities Act; (2) the Unruh Civil Rights Act ("Unruh"); and (3) the California Disabled Persons Act ("CDPA").[2]  Both of plaintiff's state claims (Unruh and CDPA) are premised upon a violation of the ADA because both acts provide that "a violation of the right of any individual under the Americans With Disabilities Act of 1990 shall also constitute a violation of this section."  Cal. Civ. Code § 51(f); 54.1(d).  Thus, if plaintiff establishes that Defendant Ramada violated the ADA, he will necessarily establish that the defendant violated the Unruh and CDPA.

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  The term "discrimination" is a little misleading:

> Although the term "discrimination" evokes images of active discrimination, e.g., a person is expressly forbidden to enter the premises because of his or her disability, Congress also intended to eliminate more passive forms of discrimination, e.g., a person is physically unable to enter the premises because it lacks a wheel-chair accessible entrance.  H.R.Rep. No. 101-485(II) at 99 (1990), reprinted at 1990 U.S.C.C.A.N. 303, 382 (a primary purpose of the ADA is to "bring individuals with disabilities into the economic and social mainstream of American life.")

Independent Living Resources v. Oregon Arena Corp., 982 F.Supp 698, FN1 (D. Org. 1997).  The scope of the Act covers not only intentional discrimination, but also the discriminatory effects of "benign neglect, apathy, and indifference." Helen L. v. DiDario, 46 F.3d 325, 335 (3rd Cir. 1995) (internal quotations omitted).

---

[2] Plaintiff has abandoned his negligence cause of action.

For example, as discussed more fully below, discrimination under the Title III of the ADA often results (as in the present case) from a failure to comply with architectural codes and, therefore, to provide "full and equal" or "safe and convenient" access to facilities governed by the law.  In a nutshell, Plaintiff's civil rights were violated because the defendant failed to provide a wheelchair accessible guest room to the plaintiff.   Under Title III of the ADA, one form of discrimination is defined as: "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled [42 U.S.C. § 12182(a)];

2. The defendant must own, operate, lease or lease to a place of "public accommodation" and, therefore, governed by Title III of the ADA [42 U.S.C. § 12182(a)];

3. The defendant's business must have an architectural barrier [42 U.S.C. § 12182(b)(2)(A)(iv)];

4. It must have been "readily achievable" for that architectural barrier to be removed [42 U.S.C. § 12182(b)(2)(A)(iv)];

5. Plaintiff must have encountered that architectural barrier and it must have impeded or interfered with full and equal access to the facility [42 U.S.C. § 12188(a)].

Plaintiff will discuss each element, seriatim.


1.    Plaintiff is Disabled

The plaintiff is a man with severe mobility impairments who cannot walk and uses a wheelchair for mobility. Exhibit 1 (Yonan Dec.), paragraph 2.  There can be little doubt that he fits the qualification under the Americans With Disabilities Act as a person with a disability. See 42 U.S.C. § 12102(2)(A) (Defining a physical impairment

1  substantially affecting a major life activity as qualifying as a "disability").   Given

2  plaintiff's inability to walk . . . this is not a genuine issue.

3

4       2.      Defendants Own, Operate, Lease or Lease to a Place of Public

5               Accommodation

6       The Ramada Inn is a hotel.   Hotels and other places of lodging are

7  expressly identified under the ADA as places of public accommodation.   42 U.S.C. §

8  12181(7)(A).   Defendant Turnpike Lodges is the owner and operator of the Ramada Inn

9  located at 4770 Calle Real, Santa Barbara, California.   Exhibit 5 (Requests for

10  Admission and Responses), Response 2, 4 and 5.   The defendant, therefore, had an

11  obligation to comply with the anti-discrimination provisions of Title III of the

12  Americans with Disabilities Act.

13

14      3.      The Ramada Had an Architectural Barrier

15      The ADA defines "discrimination" as a failure to remove architectural

16  **barriers** where it is readily achievable to do so.   42 U.S.C. § 12182(b)(2)(A)(iv).   A

17  definition of what constitutes architectural barriers is not found within the text of the

18  ADA.   The text of the ADA sets out only broad principles for the elimination of

19  discrimination against persons with disabilities.   The United States Department of

20  Justice (the Attorney General), however, is charged by statute with the implementation

21  of Title III of the ADA and Congress empowered it to issue specific regulations for

22  compliance.   42 U.S.C. § 12186(b). In accordance with this mandate, the Department of

23  Justice developed its Final Rule implementing Title III of the ADA, codified at 28

24  C.F.R. Pt. 36.   Attached as appendix "A" to that Final Rule is the Americans With

25  Disabilities Accessibility Guidelines ("ADAAG"), a building code for accessible

26  design.

27

28      The Final Rule, with ADAAG attached, therefore, is the controlling building

1   code/access standard for implementation of <u>all</u> Title III requirements and is used to

2   determine the existence of barriers. <u>Wilson v. Pier 1 Imports (US), Inc.</u> 439 F.Supp.2d

3   1054, 1067 (E.D.Cal.,2006) ("*non-compliance with ADAAG standards can demonstrate*

4   *a prima facie barrier . . ..*"; <u>Access Now, Inc. v. South Florida Stadium Corp.</u>, 161

5   F.Supp.2d 1357, 1368 (S.D. Fla. 2001); <u>D'Lil v. Stardust Vacation Club</u>, 2001 WL

6   1825832, *4 - *5 (E.D. Cal.); <u>Parr v. L & L Drive-Inn Restaurant</u>, 96 F.Supp.2d 1065,

7   1086 (D. HI 2000). Perhaps the most straightforward authority is the case of <u>D'Lil v.</u>

8   <u>Anaheim Hotel Partnership</u>, 43 Fed. Appx. 96, 97 (9th Cir. 2002), which stands for the

9   proposition that <u>any</u> sub-ADAAG condition results in a barrier "*ADAAG requirements*

10  *[for a particular condition] demonstrates that the lack of [compliance] is both a*

11  *barrier and the kind of barrier the ADA was intended to overcome. Otherwise ADAAG*

12  *would not require [the particular condition].*" Or, perhaps another Ninth Circuit

13  pronouncement is more direct, "Violations of ADAAG standards indicate the existence

14  of an architectural barrier." <u>Wyatt v. Ralphs Grocery Co.</u> 65 Fed.Appx. 589, 590, (9th

15  Cir. 2003).

16

17       In the present case, the Ramada Inn had barriers to full and equal access by

18  failure to provide a wheelchair accessible room. On November 10, 2005 (the date of

19  the incident), the Ramada Inn had 126 guest rooms. Exhibit 4 (Interrogatories and

20  Responses), Response 22. Under the ADAAG, a hotel with between 101 to 150 guest

21  rooms must have five (5) accessible rooms, two (2) of which must have roll-in showers.

22  ADAAG § 9.1.2.

23

24       When the plaintiff visited, the Ramada did not have any accessible guest rooms.

25  The "accessible" guest room given to the plaintiff was not "accessible." The plaintiff

26  could not even get his wheelchair into the bathroom. Under the ADAAG, the clear

27  width of an accessible doorway must be at least 32 inches in width. ADAAG § 4.13.5.

28  But the clear entrance width to the bathroom in the plaintiff's room measured 26.5

inches. Exhibit 1 (Yonan Dec), paragraph 5; Exhibit 2 (Photographs), pp.3-4. Under the ADAAG, an accessible toilet must have grab bars mounted on the walls adjacent to the toilet to assist in transfer from the wheelchair. ADAAG § 4.17.6. Yet, the plaintiff's toilet did not have any grab bars. Exhibit 1 (Yonan Dec), paragraph 6; Exhibit 2 (Photographs), pp.7-8. Under the ADAAG, he shower in an accessible guest room must either be a roll-in shower or have a mounted seat and grab bars. ADAAG § 4.21 – 4.21.4. But plaintiff's guest room had none of these features. Exhibit 1 (Yonan Dec), paragraph 7; Exhibit 2 (Photographs), p.4-5. When the defendant was asked in discovery how many guest rooms were designated accessible prior to the lawsuit being filed, they responded, "Defendant has agreed to designate (4) rooms accessible." Exhibit 4 (Interrogatories and Responses), Response 23.

While the commitment (flowing from being sued) to install four accessible guest rooms 16 years after the ADA was passed is probably laudable, it does not change the fact that when the plaintiff patronized the Ramada in November of 2005, they were not in compliance with the ADAAG and the plaintiff did not have full and equal access to the accommodations.

4.    The Defendant Had a Duty to Remove the Barriers

For pre-existing facilities under Title III of the ADA, discrimination is defined as: "A failure to remove architectural barriers . . . in existing facilities . . . where such removal is **readily achievable**." 42 U.S.C. § 12182(b)(2)(A)(iv). This legal obligation is held by all existing facilities and is colloquially referred to as "readily achievable barrier removal." The term "readily achievable" is defined in the text of the ADA:

> **(9) Readily achievable:** The term "readily achievable" means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include--
> (A) the nature and cost of the action . . ..
> (B) the overall financial resources of the facility

or facilities involved in the action . . ..
(C) the overall financial resources of the covered
entity . . ..

42 U.S.C. § 12181(9).   Thus, in most cases, to determine if a barrier should be removed, an entity needs to weigh the cost and/or difficulty of the removal against the ability of the defending entity.   In the current case, however, the issue of "readily achievable" is not in contention.   First, the Defendant did not raise "readily achievable" as an affirmative defense.   Second, the Defendant has already removed the barriers or is in the process of removing the barriers.

Because the defendant failed to raise "readily achievable" as an affirmative defense in their Answer, the defense is waived.   If a defendant "has failed to plead that barrier removal is not readily achievable in its answer . . . the defense is waived." Wilson v. Haria and Gogri Corp., 479 F.Supp.2d 1127, 1133 and FN7 (E.D. Cal. 2007); see also Colorado Cross Disability Coalition v. Hermanson Family Ltd. P'ship, 264 F.3d 999, 1002-03 (10th Cir. 2001); Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1274 (11th Cir. 2006); In Wilson,  the court ruled that the defendant had waived the defense that barrier removal was not readily achievable because they did not plead it as an affirmative defense.   Moreover, the Wilson court stated that, in such circumstances, the plaintiff need "not come forward with any evidence regarding barrier removal" where the defendant has not pled the affirmative defense. Id. at fn7.

Additionally, the defendant has committed to remove the barriers and has already removed (or is in the process of finishing to remove) the barriers.   "Responding Party answers it has taken and is in the process of taking all steps, measures and actions required by the Consent Decree."   Exhibit 4 (Interrogatories and Responses), Response

13;  Exhibit 6 (Consent Decree), Section 7.[3]  In <u>Wilson v. Pier 1 Imports</u>, 439 F.Supp.2d at 1054, the <u>Wilson</u> court found itself in the same position as the Court in the instant case.  The <u>Wilson</u> court was faced with a summary judgment motion and the issue of "readily achievable" barrier removal.  The court stated, *"Having found a barrier, the next step is determining whether the removal of the barrier is readily achievable.* **Given that the barrier has already been cured, the court must find that it was readily achievable,** *and thus that it violated the ADA and subsequently the Unruh Act. In sum, the court finds that the barrier existed, cure was readily achievable, and therefore the barrier violated the ADA and the Unruh Act."* <u>Id.</u> (emphasis added). Later in the same opinion, the Court reiterated, *"Once again, since defendants have already remedied the barrier, the court must find its removal was readily achievable and grant summary judgment to plaintiff under the state law claim."* <u>Id.</u> at 1071.  In the present case, the defendant has also already fixed or cured the violations.  There can be little doubt that such effort was readily achievable.

In fact, before the plaintiff knew that all the changes had been made or had been planned, plaintiff propounded discovery asking about facts supporting a claim that installing an accessible guestroom was not readily achievable and the defense declared the question "entirely irrelevant" because it was addressing all the alterations called for by the Consent Decree.  Exhibit 4 (Interrogatories and Responses), Response 20.  There is no triable issue of fact over this element.

5.    The Plaintiff Must Have Encountered the Barriers

Finally, the plaintiff must have "actual knowledge" of the barriers supposedly impeding his ability to fully and equally access the restaurant.  This does

---

[3] The defense has already filed a Request for Judicial Notice of the Consent Decree on January 23, 2007.  Plaintiff joins in that request.

1  not mean that he had to actually encounter or bang his wheelchair against the barriers.

2  See 42 U.S.C. § 12188(a)(1) ("Nothing in this section shall require a person with a

3  disability to engage in a futile gesture if such person has actual notice" that a defendant

4  is not complying with the law).  In fact, cases have held that a person can gain this

5  "actual notice" from merely being told about it.  See e.g., Parr v. L & L Drive-Inn

6  Restaurant, (2001 D. Hawai'i) 96 F.Supp.2d 1065, 1081  ("Once Plaintiff either

7  encountered discrimination **or learned of the alleged violations through expert**

8  **findings** or personal observation, he had "actual notice" that Defendant did not intend

9  to comply with the ADA. Because Plaintiff is not required to engage in a "futile

10  gesture," Plaintiff should be allowed to sue for the violations he did not encounter.")

11

12      In the present case, however, there is no problem with this prong because the

13  plaintiff actually stayed at the Ramada and encountered the barriers to his great

14  frustration and angst.  Exhibit 1 (Yonan Dec.). There is no genuine issue of material

15  fact with respect to this prong.

16

17      **In summary,** each of the elements are beyond genuine contest: (1) the plaintiff

18  is disabled; (2) the Ramada is a place of public accommodation; (3) Defendant

19  Turnpike Lodges owns the property and operates the Ramada; (4) on the day of the

20  plaintiff's stay, the Ramada had barriers to full and equal access; (5) these barriers were

21  "readily achievably" removed; and (6) the plaintiff encountered the non-removed

22  barriers.  In 1990, Congress passed a law (the ADA) providing that when these facts are

23  put together: there has been an act of discrimination.

24

25      There are no genuine issues of material fact regarding liability in this case.  The

26  defendant should have complied with the law over a decade ago and the plaintiff never

27  should have encountered the illegal barriers or had the horrendous experience that was

28

1 his stay. This case is amenable to partial summary judgment regarding the liability

2 issue.

3

4 ## IV. CONCLUSION

5 No further judicial resources should be expended in establishing liability in this

6 case: it is prepared for partial summary judgment. The elements cannot be genuinely

7 disputed. Plaintiff respectfully requests this court grant his motion for summary

8 judgment.

9

10 Dated: January 15, 2008            CENTER FOR DISABILITY ACCESS, LLP

11

12

13                                  By: _____

14                                      MARK D. POTTER
                                         Attorney for Plaintiff
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# EXHIBIT 1

1  CENTER FOR DISABILITY ACCESS, LLP
   MARK D. POTTER, ESQ., SBN 166317
2  RUSSELL C. HANDY, ESQ., SBN 195058
   100 East San Marcos Blvd., Suite 400
3  San Marcos, CA 92069-2988
   (760) 480-4162; Fax (760) 480-4170
4

5  Attorney for Plaintiff, SAMI YONAN

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRCIT OF CALIFORNIA

10

11  SAMI YONAN,                          )  Case No.: CV07-0531 CJC (SHXx)
                                         )
12            Plaintiff,                 )  **DECLARATION OF SAMI YONAN IN
                                         )  SUPPORT OF MOTION FOR
13  v.                                   )  PARTIAL SUMMARY JUDGMENT**
                                         )
14  TURNPIKE LODGES, A Limited           )  DATE: February 11, 2008
    Partnership, and DOES 1 through 100, )  TIME: 1:30 p.m.
15  inclusive,                           )  CTRM: 9B
                                         )
16            Defendants.                )  HONORABLE CORMAC J. CARNEY
                                         )
17                                       )

18

19      **1.** I, the undersigned, am the plaintiff in the above captioned matter.  Based

20  upon my own experience and knowledge, I can competently testify to the following:

21      **2.** I am a 46 year old certified public accountant with severe mobility

22  impairments.  Due to a catastrophic vehicle accident in 1994, I have been a paraplegic

23  and unable to walk for the last 14 years.

24      **3.** In the first week of November 2005, I called the Ramada Limited Inn located

25  at 4770 Calle Real in Santa Barbara, California to inquire about renting a room.  I

26  informed the Ramada Inn receptionist that I was in a wheelchair and needed a

27  wheelchair accessible room.  I asked whether the Ramada had wheelchair accessible

28  rooms and was told that they had a room that was large enough to accommodate a

_____

Points and Authorities re: Partial Summary Judgment          Page 1



1   wheelchair user and, in fact, that a women in a scooter had recently used it. I reserved

2   that room.

3       4. On November 10, 2005, I checked in with the Ramada and was given my

4   reserved room, which room was numbered 158. A true and accurate copy of my receipt

5   is attached as exhibit 3.

6       5. My experience during that stay at the Ramada was horrendous. My room was

7   far from wheelchair accessible. I could not even get my wheelchair into the bathroom.

8   The clear passage width leading into my bathroom measured only 26.5 inches in width.

9       6. Even had I been able to get my wheelchair into the bathroom, I would not

10  have been able to use it because there were no grab bars at the toilet and the toilet was

11  located in an alcove that measured 23 inches in width.

12      7. Additionally, the shower was not wheelchair accessible, *i.e.*, it was not a roll-

13  in shower and did not have any shower seat. I was unable to clean myself, use the

14  restroom, shower or otherwise use the bathroom and, in fact, ended up defecating upon

15  myself.

16      8. The photographs attached as exhibit 2 truly and accurately depict my room on

17  the date of my stay.

18      9. I have never met Ms. Hollyn D'Lil and had not heard of her before this

19  lawsuit.

20      I declare under penalty of perjury under the laws of the State of California and

21  the United States that the foregoing is true and correct.

22

23  Dated: JAN /7 , 2008  By: _____

24                          Sami Yonan

25

26

27

28

Points and Authorities re: Partial Summary Judgment                     Page 2