CENTER FOR DISABILITY ACCESS, LLP
MARK D. POTTER, ESQ., SBN 166317
RUSSELL C. HANDY, ESQ., SBN 195058
100 East San Marcos Blvd., Suite 400
San Marcos, CA 92069-2988
(760) 480-4162; Fax (760) 480-4170

Attorney for Plaintiff, SAMI YONAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRCIT OF CALIFORNIA

| | |
|---|---|
| SAMI YONAN,<br><br>        Plaintiff,<br><br>v.<br><br>TURNPIKE LODGES, A Limited Partnership, and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: CV07-0531 CJC (SHXx)<br><br>**PLAINTIFF'S NOTICE OF AND MOTION FOR AN AWARD OF ATTORNEY FEES AND COSTS**<br><br>DATE: June 23, 2008<br>TIME: 1:30 p.m.<br>CTRM: 9B<br><br>HONORABLE CORMAC J. CARNEY |

///

///

///

# TABLE OF CONTENTS

I.      RELEVANT FACTS.................................................................................1

II.     REASONABLE FEES.............................................................................2

        A.      Hourly Rate.................................................................................3

        B.      Fee Calculation..........................................................................6

III.    HENSLEY FACTORS ..........................................................................7

        A.      Time and Labor Required .........................................................7

        B.      Novelty and Difficulty of Issues..............................................7

        C.      Skill Required to Perform Legal Services.................................7

        D.      Preclusion of Other Work.........................................................9

        E.      Customary Fee...........................................................................9

        F.      Fixed or Contingent Fee...........................................................9

        G.      Time Limitations.......................................................................9

        H.      Amount Involved and Results Obtained....................................9

        I.      Experience and Ability of Attorneys.......................................10

        J.      Undesirability of the Case.......................................................10

        K.      Nature and Length of Relationship With Client.......................11

        L.      Awards in Similar Cases.........................................................11

IV.     CONCLUSION....................................................................................11


**EXHIBITS**

Declaration of Mark Potter ..............................................................................1

Billing Invoice .................................................................................................2

Settlement Agreement.......................................................................................3

Mack Fee Award...............................................................................................4

Miller Fee Award..............................................................................................5

Grove Fee Award..............................................................................................6

Lemon Declaration ...........................................................................................7

# <u>TABLE OF AUTHORITIES</u>

**<u>STATUTES:</u>**

42 U.S.C. § 12205 ................................................................................... 3

California Civil Code § 52(a) ............................................................. 3,12


**<u>CASES:</u>**

<u>Barrios v. California Interscholastic Federation</u>

   277 F.3d 1128 (9th Cir. 2002) ...................................................... FN1

<u>Boemio v. Love's Restaurant</u>

   954 F.Supp. 204 (S.D. Cal. 1997) .................................................. 13

<u>Botosan v. Paul McNally Realty,</u>

   216 F.3d 827 (9th Cir. 2000) ............................................................ 5

<u>Copeland v. Marshall,</u>

   641 F.2d 880 (1980) (en banc) ......................................................... 8

<u>Dennis v. Chang,</u>

   611 F.2d 1302 (9th Cir. 1980) ......................................................... 4

<u>Fortyune v. American Multi-Cinema, Inc.,</u>

   364 F.3d 1075 (9th Cir. 2004) ......................................................... 5

<u>Hensley v. Eckerhart</u>,

   461 U.S. 424 (1983) ............................................................... 3,4,8,9

<u>Johnson v. Georgia Highway Express, Inc.,</u>

   488 F.2d 714 (5th Cir. 1974) ........................................................... 3

<u>Jordan v. United States Dept. of Justice,</u>

   89 F.R.D. 537 (D.D.C. 1981), <u>rev'd on other grounds,</u> 691 F.2d 514,

   525 (D.C. Cir. 1982) ....................................................................... 3

<u>Koire v. Metro Car Wash</u>

   40 Cal.3d 24, 707 P.2d 195, 219 Cal.Rptr. 133 (1985) ................... 12

Lindy Bros. Builders, Inc. of Phila. v. American Radiator,

   487 F.2d 161 (3rd Cir 1973) ................................................................8

Lockheed Minority Solidarity Coalition v. Lockheed Missiles,

   406 F.Supp. 828 (N.D. Cal. 1976) ...................................................3

Margolin v. Regional Planning Comm'n

   134 Cal.App.3d 999 (1982) ...............................................................6

Newman v. Piggie Park Enter.

   390 U.S. 400 (1968) ...........................................................................3

Pickern v. Holiday Quality Foods, Inc.,

   293 F.3d 1133 (9th Cir. 2002) .........................................................5

PLCM Group, Inc. v. Drexler

   22 Cal.4th 1084 (2000) ......................................................................4

Serrano v. Priest,

   20 Cal.3d 25 (1977) ...........................................................................8

Van Gerwen v. Guarantee Mutual Life,

   214 F.3d 1041 (9th Cir. 2000) .........................................................9

Wehr v. Burroughs Corp.

   477 F.Supp. 1012 (E.D.Pa. 1979), *modified on other grounds* at

   *Wehr v. Burroughs Corp.*, 619 F.2d 276 (3rd Cir, 1980) ....................................3

Williams v. Alioto,

   625 F.2d 845 (9th Cir. 1980), cert. denied, 450 US 1012, 101 S.Ct.

   1723, 68 L.Ed.2d 213 (1981) ............................................................4

Wyatt v. Ralphs Grocery Co.,

   65 Fed.Appx. 589 (9th Cir. 2003)....................................................5

///

///

///

# I.  RELEVANT FACTS

The plaintiff is a 46-year old certified public accountant with severe mobility impairments.  Due to a catastrophic vehicle accident in 1994, he has been a paraplegic and unable to walk for the last 14 years.  In the first week of November 2005, Mr. Yonan called the Ramada Limited Inn located at 4770 Calle Real in Santa Barbara, California to inquire about renting a room.  Mr. Yonan informed the Ramada Inn receptionist that he was in a wheelchair and needed a wheelchair accessible room.  He asked whether the Ramada had wheelchair accessible rooms and was told that they had a room that was large enough to accommodate a wheelchair user and, in fact, that a women in a scooter had used it.  Mr. Yonan reserved that room.  On November 10, 2005, Mr. Yonan checked in with the hotel and was given his reserved room.

Mr. Yonan's experience was simply horrendous.  His room was far from wheelchair accessible.  Most egregiously, he could not even get his wheelchair into the bathroom.  The clear passage width leading into his bathroom measured only 26.5 inches in width.   Even had he been able to get his wheelchair into the bathroom, he would not have been able to use it because there were no grab bars at the toilet and the toilet was located in an alcove that measured 23 inches in width.  Additionally, the shower was not wheelchair accessible, *i.e.*, it was not a roll-in shower and did not have any shower seat.  Mr. Yonan was unable to clean himself, use the restroom, shower or otherwise use the bathroom and, in fact, ended up defecating upon himself.  To say that he was incensed by his experience is an understatement.  Mr. Yonan is not a litigious person.  This is only the second ADA lawsuit that he has ever filed.

During the course of the case, the defendant installed four wheelchair accessible rooms and undertook a significant variety of other modifications to make the Ramada wheelchair accessible.  This was done pursuant to a consent decree obtained by a different plaintiff from a different case.  This resolved the injunctive relief issues.  The

-1-

Plaintiff's Notice and Motion for Attorney Fees

parties eventually settled the case for $8,000.00 in damages to Mr. Yonan and a commitment by the defense to pay the attorney fees and costs, the amount to be decided by notice motion.  Exhibit 3 (Settlement Agreement), p.2, items 4 and 5.  Plaintiff now files that motion and requests the Court to award reasonable attorney fees and costs.

## II. REASONABLE FEES

Successful litigants are entitled to reasonable attorney fees "to ensure effective access to the judicial process for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (quoting H.R.Rep. No. 94-1558, p. 1 (1976)). Therefore, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." S.Rep. No. 94-1011, p. 4 (1976), U.S.Code Cong. & Admin. News 1976, p. 5912 (quoting Newman v. Piggie Park Enter., 390 U.S. 400, 402, (1968)).

The documentation submitted in support of a request for attorney fees should be sufficient to satisfy the court, or indeed a client, that the hours expended were actual, non-duplicative and reasonable, see Jordan v. United States Dept. of Justice, 89 F.R.D. 537, 541 (D.D.C. 1981), rev'd on other grounds, 691 F.2d 514, 525 (D.C. Cir. 1982), and to apprise the court of the nature of the activity and the claim on which the hours were spent. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983);        Wehr      v. Burroughs Corp., 477 F.Supp. 1012, 1016—18 (E.D.Pa. 1979), modified on other grounds at Wehr v. Burroughs Corp., 619 F.2d 276 (3rd Cir, 1980).

While other circuits require that attorney's fees applicants submit detailed, contemporaneous time records, the Ninth Circuit requires only that the affidavits be sufficient to enable the court to consider all the factors necessary to determine a reasonable attorney's fee award. Williams v. Alioto, 625 F.2d 845, 849 (9th Cir. 1980),

-2-

cert. denied, 450 US 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981); Dennis v. Chang, 611 F.2d 1302, 1308-9 (9th Cir. 1980).

A.        Reasonable Hourly Rates.

A reasonable hourly rate reflects the skill and experience of the lawyer, including any relevant areas of particular expertise, and the nature of the work performed. See Hensley, 461 U.S. at 433-34. The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. PLCM Group, Inc. v. Drexler (2000) 22 Cal.4th 1084, 1094. This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represented the client on a straight contingent fee basis, or are in house counsel. Id.; see also Welch v. Metropolitan Life Ins. Co. 480 F.3d 942, 946 (9th Cir. 2007). In Welch, the district court denied the plaintiff's fee request for reimbursement at the rates of $375 and $400 per hour and, instead, found that $250 was the reasonable rate. Id. The trial court's rationale was that "[t]here is no evidence that Plaintiff's counsel ever collects $375 or $400 per hour from paying clients except as part of an award of attorneys' fees issued by a court." Id. The Ninth Circuit flatly rejected this reduction and concluded that, "the district court clearly erred." Id. The Ninth Circuit stated, "[w]e have repeatedly held that the determination of a reasonable hourly rate is not made by reference to the rates actually charged the prevailing party" but, rather, by the "prevailing market rate." Id. In the present case, the billing rates requested by the plaintiff's attorneys are fair and reasonable.

Mr. Potter has been in practice for fourteen years and his practice is dedicated exclusively to disability related issues. His billing rate is $295 per hour. He is the former secretary of the Californian's for Disability Rights, Chapter Number One--the oldest and most prestigious disabled civil rights advocacy organizations in California. He has been admitted to the Southern, Central, Eastern, and Northern Districts of

-3-

California as well as the United States Supreme Court and has successfully litigated over 700 ADA cases including comprehensive class-actions.   He has traveled throughout California and given seminars to independent living centers concerning rights and obligations under the Americans with Disabilities Act and related state laws. He is the founder of the Center for Disability Access, a former Board member for the prestigious Southern California Rehabilitation Services and has had articles published in disabled rights periodicals.  Exhibit 1 (Potter Dec).

Russell Handy has been in practice for over ten years.  His billing rate is $250 per hour.  He graduated Magna Cum Laude from his law school, was an editor and writer for his law review, received numerous Am-Jur awards, and has been working on ADA-related issues even prior to graduation from law school and entering practice. Mr. Handy taught as an adjunct professor at California Western School of Law and clerked for the Honorable Judge David R. Thompson, 9th Cir. Court of Appeals.  Mr. Handy is also a member of CDR and CDA and has been admitted to each of the district courts of California.  Mr. Handy has also worked on and litigated hundreds of cases throughout this state and has given ADA-seminars in several counties of California. Exhibit 1 (Potter Dec).

The only other attorney to bill on this case was Christiana Poynter.  She has been in practice for almost three years, all of it involved in Americans with Disabilities Act litigation.  She has drafted hundreds of discovery documents, discovery motions, and other matters related to the necessary discovery involved in disability rights litigation. Her billing rate is $200 per hour.  Exhibit 1 (Potter Dec).

The Center for Disability Access, LLP have been significant participants in the development and shaping of ADA law with numerous reported decisions, among which many are precedent setting and often cited.   Among the more influential reported

-4-

decisions are: <u>Fortyune v. American Multi-Cinema, Inc.,</u> 364 F.3d 1075 (9th Cir. 2004); <u>Pickern v. Holiday Quality Foods, Inc.,</u> 293 F.3d 1133 (9th Cir. 2002); <u>Wyatt v. Ralphs Grocery Co.,</u> 65 Fed.Appx. 589 (9th Cir. 2003);  and <u>Botosan v. Paul McNally Realty,</u> 216 F.3d 827 (9th Cir. 2000).

Additionally, rates awarded to the claiming attorneys in previous actions are good evidence of the appropriate market rate.  <u>See</u> e.g. <u>Margolin v. Regional Planning Comm'n</u> (1982) 134 Cal.App.3d 999, 1005, in which the court rejected defendants' argument that rates awarded plaintiff's counsel in prior litigation were not relevant.  In <u>Margolin,</u> the court stated that in public interest areas of law, where the plaintiff's attorneys did not bill their clients: other court awards are "obviously relevant" and that the "most analogous evidence" would be fees sought and deemed reasonable by courts in other cases."  <u>Id.</u> at 1005.  The present case is similar.  The Center for Disability Access's clientele are largely indigent.  Bills are not collected but postponed until the end of the case.  Cases are taken with an understanding that the Center will be paid if successful and by the attorney fee-shifting provisions of the civil rights laws.  Thus, fees sought and obtained in other courts are directly relevant.  <u>See also</u> <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u> 896 F.2d 403, 407 (9th Cir. 1990) ("rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").  The majority of plaintiff's counsel's fee awards over the last two years were in state court.  Attached as exhibits 4 and 5 are two such fee awards granting plaintiff's counsel's requested rates.  The very last fee motion brought by plaintiff's counsel and ruled upon by a Central District United States Judge was in the case <u>Grove v. De La Cruz</u> CV-04-3831 CAS.  The Honorable Christina A. Snyder upheld Mr. Potter's requested rate of $295 per hour and Mr. Handy's requested rate of $250 per hour as reasonable.  Exhibit 6 (Grove Fee Award), p.3.  In 2003, the attorneys at the Center for Disability Access had their experience and hourly rate assessed by an expert who opined that Mr. Potter's market

Plaintiff's Notice and Motion for Attorney Fees

1   rate for work done in 2002-2004 was $290-320 per hour and for Mr. Handy: $260-280.

2   Exhibit 7 (Lemon Dec).

3

4   B.      The Fee Calculation; Hours Reasonably Expended.

5         As the first step in the calculation of an equitable award, the Court should

6   determine the number of hours reasonably expended in this litigation: The starting point

7   of every fee award, once it is recognized that the court's role in equity is to provide just

8   compensation for the attorneys, must be a calculation of the attorneys' services in terms

9   of the time he has expended on the case.  Anchoring the analysis to this concept is the

10   only approach that can claim objectivity, a claim which is 'obviously vital' to the

11   prestige of the bar and the courts." Serrano v. Priest,  20 Cal.3d 25, 49 (1977) (citing

12   Lindy Bros. Builders, Inc. of Phila. v. American Radiator, 487 F.2d 161 (3rd Cir 1973).

13

14         Furthermore, only hours found to have been reasonably expended may be

15   allowed.  Plaintiff is not entitled to an award of attorney's fees for hours which were

16   duplicative, unproductive, excessive or otherwise unnecessary. Hensley, 461 U.S. at

17   434.  A fee applicant must exercise "billing judgment" in the preparation of the

18   attorney's fee application; '[h]ours not properly billed to one's *client* are not properly

19   billed to one's *adversary* pursuant to statutory authority". Copeland v. Marshall, 641

20   F.2d 880, 891 (1980) (en banc) (emphasis in original), quoted in Hensley, 461 U.S. at

21   484.  A fair award is the product of reasonable hours and reasonable rates, and

22   represents an objective basis for an initial determination of attorney's fees.

23

24         The present case was litigated for a year and half, including written discovery,

25   motion work, correspondence, and 60 pieces of correspondence, yet plaintiff's counsels

26   expended only about 1.5 work weeks (about 60 total hours).    All   of   the   hours

27   submitted  to  the  court  in  the  accompanying  declaration  of  Mark  D.  Potter  were

28   reasonably incurred in the prosecution of this case.

Plaintiff's Notice and Motion for Attorney Fees

# III. HENSLEY FACTORS

In <u>Hensley v. Eckerhart</u>, (1983) 461 U.S. 424, the Supreme Court stated that the lodestar is the "presumptively reasonable fee amount" and that the Court can adjust upward or downward by a multiplier in "rare" or "exceptional" cases only.  <u>Id.</u> at 433; <u>Van Gerwen v. Guarantee Mutual Life,</u> 214 F.3d 1041, 1045 (9th Cir. 2000); <u>see</u> <u>also</u> <u>Welch v. Metropolitan Life Ins. Co.</u>  480 F.3d 942, 946 (9th Cir. 2007).   Additionally, the <u>Hensley</u> court outlined twelve factors that a Court may consider when determining the appropriate fee award or any departure from it.  Many of the factors are already subsumed into the lodestar discussion but plaintiff will briefly discuss each factor.  Plaintiff seeks no modification of the lodestar.

A.      <u>Time and Labor Required</u>

As stated above, the plaintiff showed billing judgment and restraint.  The case was litigated for a year and a half but plaintiff's counsels expended little over 60 hours.  The plaintiff seeks no multiplier as the time expended will be compensated by the lodestar.

B.      <u>Novelty and Difficulty of Issues</u>

The Americans with Disabilities Act itself and its interaction with California State Law is ever evolving and involves new issues and new challenges on a constant basis.  Aside from the fairly novel area of Americans with Disabilities Act work in general, this case presented no significant legal issues of first impression and plaintiff seeks no multiplier based on this issue.

C.      <u>Skill Required to Perform Legal Service</u>

The Americans with Disabilities Act was passed in 1990 and the Unruh Civil Rights Act was amended in 1992 to incorporate the ADA.  There are only a handful of attorneys with expertise in the area.  Access under Title III of the Americans with

-7-

Disabilities Act is predicated upon requirements to provide access to existing public accommodations, new construction and alterations to existing buildings. Those requirements in existing public accommodations turn on whether the removal of architectural barriers is "readily achievable." In turn, there is a plethora of federal regulations, Department of Justice advisory opinions and case law that is argued by both plaintiffs and defendants as to what constitutes the architectural barriers and the extent of the remedial measures necessary, if any, to remove the architectural barrier. Furthermore, there is the overlaying application of Title 24 of the California Code of Regulations requirements to public accommodations which were constructed or altered after 1982, and the American National Standards Institute (ANSI) between 1970 and 1982.

A successful prosecution of disability access cases is dependent upon a plaintiff's attorney having a thorough knowledge of the ADA and all its implementing regulations, Americans With Disabilities Act Accessibility Guidelines, Title 24 of the California Code of Regulations, ANSI standards, and the relevant sections for the California Health and Safety Code, the California Civil Code, and the California Government Code. In addition, an intimacy with the body of case law which has developed around the ADA (among which over ten published decisions were handled by plaintiff's counsel's office) and state statutory schemes, and the ability to couple this knowledge with a practical, strategic approach to interfacing with defendants, their own personal counsel, insurance defense attorneys, insurance carriers and the Court is absolutely essential.

In short, handling a complex and heavily litigated disability access case demands the services of an attorney trained and specializing in the area of law. This case did not present specialized or skillful challenges and was a fairly straight-forward application of the law.

D.   Preclusion of Other Work

Plaintiff's attorneys spent 60 hours in prosecuting this case.  That time could not be used, simultaneously, for other cases or other clients.  Thus, the work on this case precluded other work that could have and would have been done and billed for.

E.   Customary Fee

As covered above, the rates and fees charged by plaintiff's counsel are market rates and have been supported by other courts.

F.   Fixed or Contingent Fee

As is the case with virtually all civil rights cases, the fees in this case were contingent upon prevailing.  Had the plaintiff not prevailed, the plaintiff's attorneys would not be able to recover monies to compensate them for the outlay of time spent in prosecuting this case.  Nonetheless, plaintiff's counsel is not seeking a multiplier.

G.   Time Limitations

No unique time limitations imposed by either the client or the circumstances.

H.   Amount Involved and Results Obtained

During the course of the lawsuit, the defendant made all the changes sought by the plaintiff.   Under the Unruh Civil Rights Act and California Disabled Persons Act, a plaintiff is entitled to damages. Cal. Civ. § 52(a); 54.3(a).  It's difficult to measure the "damage" caused by denial of access.  Thus, the two statutes have a minimum that a defendant must pay.   In an Unruh case before the California Supreme Court, the defendant violated the law but argued that it had "not harmed a single hair on the plaintiff's head or subjected him to the slightest deprivation or embarrassment of any kind." Koire v. Metro Car Wash, 40 Cal.3d 24, 33, 707 P.2d 195, 200, 219 Cal.Rptr. 133, 138 (FN13) (1985).  The Court stated, "by passing the Unruh Act, the Legislature

-9-

established that arbitrary sex discrimination by businesses is *per se* injurious. Section 51 provides that all patrons are entitled to *equal* treatment. Section 52 provides for minimum statutory damages of $250 [previous minimum] for *every* violation of section 51, *regardless* of the plaintiff's actual damages." <u>Id.</u> at 33, 707 P.2d at 200, 219 Cal.Rptr. at 138.  The minimum damage award that was in effect for the plaintiff's case was either $4,000 or $1,000.   Courts just don't award that much money for violations that do not involve impact injury.  For example, in the only published decision to actually identify a damage award: <u>Boemio v. Love's Restaurant</u>  954 F.Supp. 204 (S.D. Cal. 1997), the court held a bench trial, found for the plaintiff, and awarded $1,000 (the minimum) although the plaintiff had to urinate in the parking lot.  This case was no different from other access denial cases with respect to damages.  It simply never involved large sums of money.  The settlement of $8,000 is well within (if not more than) the sphere of what is contemplated by the statute as a penalty against the defendants.  Thus, the plaintiff recovered everything that he could have hoped for.

I.    <u>Experience and Ability of Attorneys</u>

Discussed extensively above under section II.

J.    <u>Undesirability of the Case</u>

This case, like many small dollar civil rights cases, is low on the desirability scale.  The clientele is largely (as in the present case) very low income or indigent. Payment is completely dependent upon winning.   It is usually big business and insurance companies on the other side.  Or, as in the present case, defended by a firm that advertises itself as being an anti-ADA firm, looking to curtail, hurt, or otherwise limit ADA suits and openly hostile or critical of plaintiff's counsel and these types of lawsuits.

Plaintiff's Notice and Motion for Attorney Fees

K.     <u>Nature and Length of Professional Relationship with Client</u>

There is no relationship between the plaintiff and the Center for Disability Access other than in handling his lawsuit.

L.     <u>Awards in Similar Cases</u>.

This matter is discussed above.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Attorney requests this court all his fees and costs as outlined in the attached Declaration of Mark D. Potter.

Dated: May 29, 2008                          CENTER FOR DISABILITY ACCESS, LLP

                                             By: _____
                                                  MARK D. POTTER
                                                  Attorney for Plaintiff

Plaintiff's Notice and Motion for Attorney Fees

**<u>EXHIBIT 1</u>**

1  CENTER FOR DISABILITY ACCESS, LLP
   MARK D. POTTER, ESQ., SBN 166317
2  RUSSELL C. HANDY, ESQ., SBN 195058
   100 East San Marcos Blvd., Suite 400
3  San Marcos, CA 92069-2988
   (760) 480-4162; Fax (760) 480-4170
4

5  Attorney for Plaintiff, SAMI YONAN

6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRCIT OF CALIFORNIA

10

11  SAMI YONAN,                        )  Case No.: CV07-0531 CJC (SHXx)
                                       )
12          Plaintiff,                 )  **DECLARATION OF MARK POTTER**
                                       )  **IN SUPPORT OF PLAINTIFF'S**
13  v.                                 )  **MOTION FOR AN AWARD OF**
                                       )  **ATTORNEY FEES AND COSTS**
14  TURNPIKE LODGES, A Limited         )
    Partnership, and DOES 1 through 100,)  DATE: June 23, 2008
15  inclusive,                         )  TIME: 1:30 p.m.
                                       )  CTRM: 9B
16          Defendants.                )
                                       )  HONORABLE CORMAC J. CARNEY
17                                     )
                                       )
18  _____  )

19      **1.** I, the undersigned, am an attorney licensed to practice law by the State bar

20  of California.  I am the attorney of record for the moving party, plaintiff Sami

21  Yonan and, in that capacity, I am familiar with this matter.  Based upon my personal

22  knowledge, I can competently testify to the following.

23      **2.** The billing invoice filed concurrently as exhibit 2 is incorporated into this

24  declaration and it accurately depicts the time spent and actions taken in the

25  prosecution of this case.  The fee award rulings attached as exhibits 4-6 are true and

26  accurate copies of those fee rulings as handed down by the respective judges and

27  served upon me as counsel of record in those cases.

28      **3.** The settlement agreement attached as exhibit 3 is a true and accurate copy

                                      -1-
_____

Declaration of Mark Potter

of the settlement agreement reached and executed in this case.

**4.** The work expended in this case was necessarily expended to effectively prosecute this case as is amply supported by the record.

**5.** I have been in practice for over fourteen years and my practice is dedicated exclusively to disability related issues.  I am the former secretary of the Californian's for Disability Rights, Chapter Number One--the oldest and most prestigious disabled civil rights advocacy organizations in California. I have been admitted to the Southern, Central, Eastern, and Northern Districts of California as well as the United States Supreme Court and have successfully litigated over 700 ADA cases including comprehensive class-actions.  I have traveled throughout California and given seminars to independent living centers concerning rights and obligations under the Americans with Disabilities Act and related state laws.  I am the founder of the Center for Disability Access, a Board member for the prestigious Southern California Rehabilitation Services and have had articles published in disabled rights periodicals.  Many of my cases have been published, including some at the Ninth Circuit level, helping to shape the law and establish precedence.  My billing rate for ADA related work is $295, which is a fair rate for attorneys with similar experience and expertise in this highly nuanced area of law.

**6.** Russell Handy, bills at $250 per hour. Mr. Handy has been in practice for nine years.  He graduated Magna Cum Laude from his law school, was an editor and writer for his law review, received numerous Am-Jur awards, and has been working on ADA-related issues even prior to graduation from law school and entering practice.  Mr. Handy has admirable qualifications.  He taught as an adjunct professor at California Western School of Law and clerked for the Honorable Judge David R. Thompson, 9th Cir. Court of Appeals.  Mr. Handy is also a member of CDR and CDA and has been admitted to each of the district courts of California.  Mr. Handy has also worked on and litigated hundreds of cases throughout this state and has given ADA-seminars in several counties of California.

-2-

**7.** The only other attorney to bill on this case was Christiana Poynter. She has been in practice for three years, all of it involved in Americans with Disabilities Act litigation. She has drafted hundreds of discovery documents, discovery motions, and other matters related to the necessary discovery involved in disability rights litigation. We bill her at $200 per hour.

**8.** The Center for Disability Access, LLP, has been a significant participant in the development and shaping of ADA law with a number of reported cases including often cited cases such as: <u>Fortyune v. American Multi-Cinema, Inc.,</u> 364 F.3d 1075 (9th Cir. 2004); <u>Pickern v. Holiday Quality Foods, Inc.,</u> 293 F.3d 1133 (9th Cir. 2002); <u>Wyatt v. Ralphs Grocery Co.,</u> 65 Fed.Appx. 589 (9th Cir. 2003); and <u>Botosan v. Paul McNally Realty,</u> 216 F.3d 827 (9th Cir. 2000).

**9.** Because the nature of my practice is wholly dependent on billing at a market rate, I have extensive experience with respect to what attorneys specializing in disability law and civil rights bill for civil litigation and what courts are routinely awarding and can attest that the rates billed by the Center for Disability Access, LLP for its attorneys are well within market rates trending towards the low to middle ground of the typical market range.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Dated: May 29, 2008                CENTER FOR DISABILITY ACCESS, LLP

By: _____
          MARK D. POTTER
          Attorney for Plaintiff

Declaration of Mark Potter

**<u>EXHIBIT 2</u>**

# Center for Disability Access, LLP

## Billing Statement



**Bill To:**   **Sami Yonan**
                *REDACTED*

### *Yonan v. Tunpike Lodges*

| Date | Case # | Data Compiler | Amount Incurred | Amount Received | Total Due |
|---|---|---|---|---|---|
| 05/28/08 | CV07-0531 | RCH | **$17,158.00** | $0 | **$17,158.00** |

| Date | Project Item: | Billing Person | Time | Cost |
|---|---|---|---|---|
| 2006/09/14 | Met with Mr. Yonan; went over allegations about his experience with the Ramada; swung by the motel to check out the parking and path of travel issues; notes for investigator re room | Mark D. Potter, Attorney | 3.2 | 944 |
| COST | Filing Fee | Clerk of Court | 0 | 320 |
| COST | Service Charges | DLS | 0 | 49.50 |
| 2006/11/23 | Reviewed the public records to determine the identities of the responsible parties; went to the Building Department on Garden to search the history of any permits, applications and projects on parcel number 067-230-030 to determine if the property had undergone alterations or modifications that would trigger stricter Title 24 requirements | Russell Handy, Attorney | 2.9 | 725 |
| 2006/12/08 | Rented room #158, took photos, measurements, created diagram | Justin Barkowski, Investigator | 4 | 300 |
| 2006/12/11 | Reviewed the investigator photographs, notes and diagram; reviewed the public records information; drafted the complaint | Mark D. Potter, Attorney | .8 | 236 |
| 2007/01/08 | Reviewed the CMC Order | Mark D. Potter, Attorney | .1 | 29.5 |
| 2007/01/30 | Reviewed the Notice of Removal; Notice of Related Cases; the statement by defense; the request for judicial notice; the consent decree; updated the trial folder; notes to file | Mark D. Potter, Attorney | 1.3 | 383.5 |
| 2007/02/06 | Researched the issue raised by defense counsel re: preclusive effect of the consent decree; drafted inter office memo regarding viability of case | Russell Handy, Attorney | 1.7 | 425 |
| 2007/02/14 | Reviewed the notice regarding transfer of the judge | Russell Handy, Attorney | .1 | 25 |
| 2007/03/06 | Drafted Interrogatories, Requests for Admission, and Requests for Production of Documents | Christiana Poynter, Esq. | 2.2 | 440 |
| 2007/03/09 | Drafted plaintiff's Initial Disclosures | Mark D. Potter, Attorney | .2 | 59 |
| 2007/03/14 | Reviewed Orlick's letter claiming that the discovery is premature; reviewed the Local Rules and FRCP; drafted response letter explaining his error, etc. | Mark D. Potter, Attorney | .5 | 147.5 |
| 2007/03/14 | Drafted joint Rule 26 report and cover letter | Carly Desantis, Paralegal | 1 | 50 |
| 2007/03/14 | Reviewed email from Orlick demanding dismissal | Mark D. Potter, Attorney | .1 | 29.5 |
| 2007/03/29 | Drafted letter to defense counsel re: default status | G. Earls, | .1 | 5 |

| | | Paralegal | | |
|---|---|---|---|---|
| 2007/04/02 | Reviewed the Answer and 40 affirmative defenses from the defense; updated the trial folder; notes to file for discovery | Mark D. Potter, Attorney | .8 | 236 |
| 2007/04/11 | Reviewed the responses to Requests for Admission, Interrogatories and Requests for Production of Documents; updated the Trial Folder; notes for letter | Mark D. Potter, Attorney | 1.1 | 324.5 |
| 2007/04/16 | Reviewed the Notice of Intent to schedule | Mark D. Potter, Attorney | .1 | 29.5 |
| 2007/05/01 | Received Rule 68 Offer; discussion with client; drafted response letter and counter offer | Mark D. Potter, Attorney | .6 | 177 |
| 2007/05/14 | Drafted letter to Mr. Orlick requesting his provisions for report | Carly DeSantis, Paralegal | .1 | 5 |
| 2007/05/23 | Drafted letter to Mr. Orlick for his provisions | Carly DeSantis, Paralegal | .1 | 5 |
| 2007/05/23 | Reviewed the Initial Disclosures and the defense provisions for the joint report; notes to CD; updated trial folder | Mark D. Potter, Attorney | .4 | 118 |
| 2007/05/30 | Reviewed and executed final draft of the Joint Report | Mark D. Potter, Attorney | .2 | 59 |
| 2007/07/18 | Reviewed the Court's Scheduling Order and Order regarding settlement procedures | Mark D. Potter, Attorney | .1 | 29.5 |
| 2007/08/15 | Drafted the Request for Entry and Inspection; dictated letter to Lauren | Christiana Poynter, Esq. | .4 | 80 |
| 2007/09/13 | Drafted meet and confer letter per the Local Rules regarding the objections and incomplete answers in the discovery responses; outlined our points and authorities; | Christiana Poynter, Esq. | 1.7 | 340 |
| 2007/09/13 | Reviewed defense counsel's objection to the site inspection; drafted meet and confer letter explaining our authority and our position | Christiana Poynter, Esq. | .8 | 160 |
| 2007/09/18 | Reviewed defense counsel's letter regarding the discovery dispute; drafted another meet and confer letter and a proposed stipulation of fact regarding the readily achievable defense | Christiana Poynter, Esq. | 1.2 | 240 |
| 2007/10/17 | Received Notice of Deposition; calendar check; Drafted letter re: date of deposition | Jessica Stepp, Paralegal | .2 | 10 |
| 2007/10/24 | Reviewed the revised notice of deposition; drafted letter regarding potential change in location | Jessica Stepp, Paralegal | .2 | 10 |
| 2008/01/11 | Drafted majority of the memorandum of points and authorities in support of a motion for partial summary judgment; drafted client's declaration; discussion with client | Mark D. Potter, Attorney | 4.8 | 1416 |
| 2008/01/15 | Finished drafting the points and authorities; drafted the notice and motion; drafted the uncontroverted facts; finalized the motion for summary judgment | Mark D. Potter, Attorney | 3.7 | 1091.5 |
| 2008/01/18 | Drafted the proposed Order in support of the MSJ | Mark D. Potter, Attorney | .2 | 59 |
| 2008/02/01 | Reviewed the defense opposition to the motion for summary judgment; reviewed their many exhibits and request for judicial notice; reviewed the declaration of Patton and Spann and Orlick; updated the Trial Folder; started outlining our reply | Mark D. Potter, Attorney | 3.3 | 973.5 |
| 2008/02/04 | Finished drafting the reply brief in support of the MSJ; drafted my declaration | Mark D. Potter, Attorney | 2.1 | 619.5 |
| 2008/02/06 | Reviewed court's minute order moving hearing date | Mark D. Potter, | .1 | 29.5 |

| | to 3/3 | Attorney | | |
|---|---|---|---|---|
| 2008/02/19 | Reviewed the defense witness list and memo of contentions; updated the trial folder; drafted the plaintiff's memornandum of contentions; the plaintiff's witness list; and objections to witnesses on the defense witness list | Mark D. Potter, Attorney | 4.5 | 1327.5 |
| 2008/02/19 | Drafted letter to Orlick re: the joint exhibit list | Mark D. Potter, Attorney | .1 | 29.5 |
| 2008/02/22 | Reviewed letter from Orlick accepting our demand; discussion with client; drafted confidential settlement agreement draft and dictated cover letter to Orlick | Mark D. Potter, Attorney | 1.3 | 383.5 |
| 2008/02/25 | Joint Stip to vacate trial dates | Mark D. Potter, Attorney | .1 | 29.5 |
| 2008/02/27 | Reviewed court's Ruling re: needing further briefing, etc. | Mark D. Potter, Attorney | .1 | 29.5 |
| 2008/03/11 | Drafted letter to Orlick re: changes to settlement agreement | Lauren Clark, Paralegal | .1 | 5 |
| 2008/03/14 | Reviewed defense proposed language for a settlement agreement; made a number of proposed changes | Mark D. Potter, Attorney | .3 | 88.5 |
| 2008/05/12 | Drafted letter to Orlick asking for his client's signature and the settlement proceeds | Lauren Whitehead, Paralegal | .1 | 5 |
| 2008/05/14 | Drafted letter to Orlick | Lauren Whitehead, Paralegal | .1 | 5 |
| 2008/05/29 | Drafted Motion for Attorney Fees, points and authorities, my declaration | Mark D. Potter, Attorney | 2.3 | 678.5 |
| Est | Reviewing opposition points and authorities, drafting reply brief, travel to and arguing at oral argument | Mark D. Potter, Attorney | 8 | 2360 |
| Phone Log | • 2/21/08 LM Orlick  .1hrs; <br> • 2/21/08 (w/Yonan)    .4hrs; <br> • 2/21/08 (w/Orlick) re: settlement issues  .2hrs; <br> • 2/14/08 (w/Orlick) re: motion for summary judgment, case issues, etc.  .4hrs; <br> • 1/17/08 (w/Yonan) .2hrs; <br> • 1/8/08 (w/Orlick) re: MSJ, etc.  .3hrs; <br> • 11/1/07 (w/Yonan) re: depo prep, etc.  .8hrs; <br> • 10/25/07 (w/Yonan)  .1hrs; <br> • 10/17/07 (w/Yonan) re: scheduling, depo, etc.  .3hrs; <br> • 9/28/07 (w/Orlick) re: depos of Yonan and his friend  .3hrs; <br> • 9/28/07 (w/Orlick) re: case, his demand, etc.  .3hrs; <br> • 9/27/07 (w/Yonan) re: settlement position, etc.  .5hrs; <br> • 9/27/07 LM Orlick  .1hrs; <br> • 9/26/07 (w/Orlick) re: case discussion  .3hrs; <br> • 6/5/07 LM Orlick .1hrs; <br> • 5/30/07 LM Orlick  .1hrs; <br> • 5/9/07 (w/Orlick) re: his threats, demands, sanctions, etc. .2hrs; <br> • 4/25/07 (w/Orlick) re: case  .1hrs; <br> • 4/09/07 (w/Orlick) re: trying to settle case | Mark D. Potter, Attorney | 6.9 | 2035.5 |

| | | | | |
|---|---|---|---|---|
| | early, he rejected offer  .3hrs;<br>• 3/27/07 (w/Orlick) re: case issues  .1hrs;<br>• 3/20/07 (w/Orlick) re: case facts  .1hrs;<br>• 3/19/07 (w/Yonan) re: case and our demand  .4hrs;<br>• 3/19/07 (w/Orlick) re: he wants demand  .1hrs;<br>• 2/28/07 (w/Orlick) re: Rule 26 meeting  .3hrs;<br>• 2/28/07 (w/Orlick) re: consent decree analysis  .3hrs;<br>• 2/14/07 (w/Orlick) re: service, consent decree  .3hrs;<br>• 1/5/07 (w/Orlick) re: case precluded by consent decree, etc.  .2hrs; | | | |
| | | | | |
| **Totals** | | | **64.3** | **$17,158 .00** |

**EXHIBIT 3**

04/04/2008 12:55 FAX   415 398 5584        JEFFER MANGELS BUTLER                    ☑002/010

Office Copy

## PARTIAL SETTLEMENT AGREEMENT AND RELEASE

The parties to this Partial Settlement Agreement and Release ("Agreement") are Sami Yonan ("Yonan" or "Plaintiff") on the one hand, and Turnpike Lodges, Ltd. ("Defendant"), on the other hand, (individually referred to as a "Party" and collectively referred to as the "Parties"). There are no intended beneficiaries of this Agreement other than as specifically stated herein.

## RECITALS

This Agreement is made with reference to the following facts:

A.   On December 26, 2006, Plaintiff filed his Complaint in the Superior Court for the State of California, County of Santa Barbara, Case No. 1242695.

B.   On January 23, 2007, Defendant caused the Litigation (defined below) to be removed to this Court.

C.   Defendant owns and operates the Ramada Limited Santa Barbara hotel located at 4770 Calle Real, Santa Barbara, California. This property, which is the subject of the Disputes between the Parties referenced in Paragraphs 2.2 and 2.3 below, is hereinafter referred to as the "Facility."

D.   In the Litigation, Plaintiff alleges he was discriminated against on the basis of his alleged disabilities at the Facility.

E.   Certain disputes and controversies (the "Disputes") have arisen between the Parties hereto.

F.   The Disputes include, but are not limited to, the claims, complaints, demands and causes of action set forth, or which could have been set forth, by Yonan in a civil action pending in the United States District Court, for the Central District of California, entitled <u>Sami Yonan v. Turnpike Lodges, et al.</u>, Case No. CV 07-0531CJC-(SHx) (the "Litigation").

G.   In resolution of the Litigation and the Disputes, and for the valuable consideration recited herein, the Parties believe it to be in their best interest to enter into this Agreement

H.   In the Litigation, Yonan claims, <u>inter alia</u>, that the Facility does not comply with the Americans with Disabilities Act, 42 U.S.C. §§ 12101, <u>et seq.</u>, the Unruh Act, Cal. Civil Code §§ 51 <u>et seq.</u>, and other statutes. Defendant has denied, and continues to deny, these claims.

I.   The Parties intend to settle and dispose of, fully and completely, the Disputes and any and all claims, potential claims, complaints, demands, and causes of action reflected in the Litigation (or which could have been alleged therein) or relating to the Facility, or which may have arisen prior to the Effective Date (defined below) of this Agreement from the

same operative facts as those alleged in the Litigation (or which could have been alleged therein) with the sole exception of attorneys' fees and costs incurred in this case.

    J.  Plaintiff shall file with the Court a Motion for Dismissal, if necessary, or a Stipulation and Order for Dismissal with Prejudice.

    NOW THEREFORE, in consideration of the above recitals and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

    1.  <u>Recitals</u>. Recitals A through J are incorporated herein by this reference and the Parties agree that the information recited above is true and correct.

    2.  <u>Dismissal</u>. On or before five (5) calendar days from the receipt of payment set forth in Paragraph 4 below, Plaintiff will prepare, execute and deliver to the defendant a Motion or Stipulation for Order of Dismissal with Prejudice of the Litigation (the "Stipulation for Dismissal") as required by the Court. Within two (2) calendar days of the receipt of that executed Stipulation for Dismissal, Defendant will sign and have the fully executed stipulation filed with the United States District Court for the Central District of California and both Parties will thereafter, take all necessary steps to effectuate the dismissal of the Litigation with prejudice. Each Party hereby irrevocably authorizes and directs its/his attorneys of record to execute and deliver to the Court the Stipulation for Dismissal, so that the same may be filed with the Court in accordance with this Agreement.

    3.  <u>Tax Information</u>. Plaintiff shall provide to counsel for Defendant at the address set forth in Section 9(b) below, a completed IRS form W-9 for the "Center For Disability Access, LLP in trust for Sami Yonan" (the "Payee"). There shall be no other payment by or to any other person or entity with respect to damages. The Tax Identification Number for Center For Disability Access, LLP is 33-0855260. Defendant shall not withhold any taxes on behalf of Plaintiff or his counsel. Plaintiff and his counsel shall indemnify and hold Defendant harmless for any tax liability they may incur as a result of any payment made pursuant to this Agreement.

    4.  <u>Payment</u>. Defendant shall pay to Plaintiff the sum of Eight Thousand Dollars ($8,000.00) (U.S. funds) (the "Settlement Payment") in full satisfaction of any and all claims of any nature or amount Plaintiff may have or claim to have against Defendant, except for claims of attorneys' fees or costs. The Settlement Payment shall be made by Defendant to Plaintiff in check form made payable to Payee and sent via overnight means to the Center For Disability Access, LLP to the address set forth in Section 9(b) below. Payment shall be made after Plaintiff provides to counsel for Defendant the IRS Form W-9 as stated in paragraph 3 above.

    5.  <u>Allocation of Attorneys' Fees</u>. Defendant will bear its own Attorney's fees and costs. Plaintiff may file a motion for an award of attorneys' fees ("Motion") and Defendant

agrees to pay any reasonable attorney fees and costs as may be determined by the Co urt via a noticed motion therefor.  Defendant may oppose the Motion on any and all grounds.

6.      Defendant represents that pursuant to and in compliance with the terms of that certain Consent Decree and Order entered by this Court on December 2, 2004, in Hollynn DiLil v. Ramada Limited, Santa Barbara, et al., Case No. SACV 03-589-CJC (SHx), in addition to its then existing accessible guestroom, it installed three (3) additional guestrooms in compliance with the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and Title 24 of the California Code of Regulations.

7.      <u>Releases.</u>

a.      In consideration of the mutual releases contained herein  and for good and valuable consideration, the receipt and sufficiency of which are acknowledged by each Party, the Parties promise, agree and release as follows:  Plaintiff agrees that, except as to such rights or claims as may be created by this Agreement, he hereby forever, finally, fully and completely releases, relieves, acquits, remises and discharges Defendant and its parents, subsidiaries, partners, affiliates, members, successors, predecessors and assigns, and past and present employees, officers, directors, agents, representatives, trustees, attorneys, accountants and shareholders, each in its, his or her individual and representative capacities (collectively, the "Released Parties"), from all liens, losses, claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses, (not including attorneys' fees and litigation costs), damages, injuries, suits, actions and causes of action of whatever kind, nature and amount, whether known or unknown, suspected or unsuspected, contingent or fixed, based upon, arising out of, incidental to, appertaining to, in connection with and/or emanating from, in any way, any of the matters or facts referenced in Recitals A through J, inclusive, set forth above, or which were or could have been alleged in the Litigation;

b.      Except as to such rights or claims  as may be created by  his Agreement, Defendant hereby releases, remises, and forever discharges Plaintiff from any and all claims, potential claims, demands, and cause or causes of action related to the Facility as reflected in the Litigation, and any other claims, demands, or causes of action which may have arisen from the same or similar operative facts as those alleged or which could have been alleged in the Litigation;

c.      The Parties acknowledge and agree that they have been informed by his/its attorneys and advisors of, and that they are each familiar with and hereby expressly waive the provisions of Section 1542 of the California Civil Code, and any similar statute, code, law or regulation of any state of the United States, or of the United States, to the fullest extent that they may waive such rights and benefits.  Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR
> SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE
> TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY

3

## AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

d.      The Parties acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, as to the matters released herein. Nevertheless, the Parties intend, through this release, to fully, finally and forever release all such matters, and all claims related thereto, which do now exist, may exist or heretofore have existed. In furtherance of such intention, the releases herein given shall be and remain in effect as a full and complete release of such matters, notwithstanding the discovery or existence of any such additional or different claims or facts related thereto by the Parties. In entering into this release, the Parties do not rely upon any statement, representation or promise of the other Party, except as expressly stated in this Agreement and the documents and instruments executed in connection herewith and therewith;

e.      In entering into this Agreement and the releases contained herein, the Parties assume the risk of any misrepresentation, concealment or mistake, and if the Parties should subsequently discover that any fact either Party relied upon in entering into this Agreement was untrue or that any fact was concealed from either Party or that any understanding of the facts or of the law was incorrect, the Parties shall not be entitled to set aside this Agreement by reason thereof, regardless of any claim of fraud, misrepresentation, promise made without the intention of performing it, concealment of fact, mistake of fact or law, or other circumstances whatsoever;

f.      Plaintiff represents and warrants, and Defendant is relying thereon that Plaintiff has received independent legal advice from attorneys of his choice with respect to the advisability of executing this Agreement and the releases provided for herein, and prior to the execution of this Agreement by Plaintiff, his attorneys reviewed this Agreement and discussed this Agreement in full detail with Plaintiff;

g.      The Parties further represent they have the capacity to enter into this Agreement;

h.      The Parties and their attorneys have made such investigations of the facts pertaining to this Agreement and all of the matters appertaining thereto, as they deem necessary. This Agreement has been carefully read by, the contents hereof are known by and understood by, and it is signed freely, and without duress, by the Parties and approved as to form and content by their counsel;

i.      The terms of this Agreement are contractual and not mere recitals;

j.      The Parties represent and warrant that they are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they release herein, and that they have not heretofore assigned or transferred, or purported to assign or transfer, to any person, firm or entity any claims or other matters herein released. The Parties shall indemnify, defend and hold each other harmless from and against all claims based upon or

4

04/04/2008 12:56 FAX   415 398 5584          JEFFER MANGELS BUTLER                     ☑ 006/010

arising in connection with prior assignments or purported assignments or transfers of any claims or matters released herein; and

                k.      Plaintiff's waivers and releases herein are to claims arising from this Facility only.  Plaintiff does not waive or release any claims of any kind arising from other locations owned, operated or leased by Turnpike Lodge, Ltd.

                8.      Covenant Not to Sue and Notice and Cure Period.

                a.      Covenant Not to Sue.  Plaintiff, including those acting on behalf of Plaintiff (including, without limitation, heirs, beneficiaries, executors, administrators, successors, and assignees), agree not to file any actions, lawsuits, claims, or administrative complaints against the Released Parties or related to or arising from the Facility without first providing the Defendant a notice and a reasonable opportunity to cure same.  Any filed or threatened actions, lawsuits, claims, or administrative complaints that violate this Section shall constitute a breach of this Agreement, and entitle the Released Parties to all relief available under the law; and

                b.      Notice and Cure Period.  Plaintiff agrees if at any time he has a claim, complaint, action, cause of action, claim for relief, or dispute against any of the Released Parties, or claims that any condition at or involving the Facility which fails to comply with this Agreement or state or federal law or regulation exists at the Facility (collectively, the "Claims"), then before Plaintiff can commence any judicial or administrative proceeding based on or related to the Claims, Plaintiff must first provide the Released Parties with immediate, written notice specifying in complete detail the basis of such Claims (the "Notice") and provide the Released Parties ninety (90) days within which to commence to cure the conditions which form the basis of the Claims.  Only if Plaintiff provides such Notice and the Released Parties fail to commence to cure the conditions referenced within said Notice within ninety (90) days of the Release Parties' receipt of the Notice, can Plaintiff then commence a proceeding to enforce the Claims. Plaintiff's Notice shall be provided pursuant to Section 9.b (1) below.

                9.      Miscellaneous.

                a.      Failure or Indulgence Not A Waiver.  No failure or delay on the part of any Party in the exercise of any right, power, or privilege hereunder or under the documents or instruments referred to herein shall operate as a waiver thereof, and no single or partial exercise of any such power, right or privilege shall preclude a further exercise of any right, power or privilege.

                b.      Notices.  Except for any notice required under applicable law to be given in another manner:

                (1)      Any notice to Defendant shall be addressed to Defendant as follows:

BAF SF 4840001 64636-0003 4/2/08

Mr. Thomas C. Patton
Turnpike Lodges, Ltd.
c/o Ramada Limited Santa Barbara
4770 Calle Real
Santa Barbara, California  93110
Fax No.:  (805) 964-0075

With a copy to:

Jeffer, Mangels, Butler & Marmaro LLP
Two Embarcadero Center - 5th Floor
San Francisco, California 94111
Attn: Martin H. Orlick, Esq.
Fax No. (415) 398-5584; and

(2)    Any notice to Plaintiff shall be addressed as follows:

Center For Disability Access, LLP
100 East San Marcos Blvd., Suite 400
San Marcos, CA  92069-2988
Attn: Mark D. Potter, Esq.
Fax No. (760) 480-4170.

All notices, reports, requests, demands, directions, and other communications provided for in this Agreement must be in writing and must be transmitted via facsimile and overnight delivery to the appropriate Party at that Party's respective address set forth above. Notice shall be deemed effective upon receipt of the overnight delivery of the written notice. Facsimile notice shall be for convenience only and shall not be deemed effective notice under this Agreement.

c.    Applicable Law.  This Agreement and the documents and instruments referred to herein, and the rights and obligations of the Parties hereto shall be governed by and construed in accordance with the laws of the State of California.

d.    Binding on Successors.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

e.    Modifications and Amendments.  This Agreement may only be modified or amended by written agreement duly executed by all Parties.

f.    Integration.  This Agreement and all documents and instruments executed herewith and all of the documents and instruments referred to herein, constitute a single, integrated written contract expressing the entire agreement of the Parties hereto relative to the subject matter hereof.  No covenants, agreements, representations or warranties of any kind

6

LA# SF 6849069-1  64646 0003  1/24/8

whatsoever have been made by any Party hereto with respect to the subject matter hereof, except as specifically set forth in this Agreement.

        g.    Severability. If any provision of this Agreement is found to be illegal, invalid or unenforceable under present or future laws effective during the term of this Agreement, such provisions shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision never comprised a part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by severance from this Agreement.

        h.    Acknowledgment of Waiver. The Parties represent and warrant that all of the waivers, warranties and promises set forth in this Agreement are made after consultation with legal counsel of their choosing and with an understanding of their significance and consequence and that they are reasonable.

        i.    Rights of Third Parties. Nothing contained in this Agreement is intended, nor shall it be construed or deemed to confer any rights, powers or privileges on any person, firm, partnership, corporation or other entity not an express Party hereto or a successor-in-interest.

        j.    Headings. Section headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

        k.    Effective Date and Counterparts. The Effective Date of this Agreement shall be the date when the last Party and its/his counsel of record execute and deliver this Agreement to the other Party's counsel of record. This Agreement may be executed in one or more counterparts but all of the counterparts shall constitute one Agreement.

        l.    Facsimile or Electronic Signatures. A facsimile or electronic signature on this Agreement shall have the same force and effect and be as legally binding as an original signature.

        m.    Neutral Interpretation. This Agreement and the documents and instruments executed in connection with this Agreement constitute the product of the negotiation of the Parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any Party based upon the source of the draftsmanship hereof.

        n.    Settlement and No Admission of Liability. This Agreement affects the settlement of claims which are denied and contested and nothing contained herein shall be construed as an admission by Defendant of any liability of any kind to Plaintiff. Defendant denies any liability in connection with any claims and intends merely to avoid litigation and buy its peace.

        o.    Effectiveness of Agreement. The effectiveness of the terms of this Agreement are expressly conditioned upon the Defendant's tendering payment Settlement Payment and the filing by the Court of an Order of Dismissal of the Litigation with prejudice, consistent with and pursuant to Section 2 of this Agreement.

04/04/2008 12:57 FAX   415 398 5584          JEFFER MANGELS BUTLER                              ☒ 009/010

p.      Cooperation.  The Parties shall further execute, acknowledge and deliver any further assurances and/or documents reasonably requested by any other Party, and will take any other action consistent with the terms of this Agreement that may reasonably be requested by the other Party, for the purposes of implementing the terms of this Agreement.

q.      Confidentiality.  This Agreement and the terms thereof shall be maintained in strict confidence by all Parties.  For example, and not by way of limitation, no Party shall initiate, or participate in a press release, press conference, or other public disclosure of the settlement embodied by this Agreement, it being agreed by all Parties that the policy of the law is best served by private settlements.  In the event of press or other inquiry, the Parties agree they will have no comment or may simply state that all Disputes have been resolved.  The terms of this Agreement shall only be disclosed pursuant to lawful process or judicial order, and/or to spouses and legal and tax advisors or as part of the post-dismissal Motion for attorneys' fees.

r.      Non-Disparagement.  The Parties agree to not make any disparaging remarks, statements, or comments, either orally or in writing, regarding opposing Parties and/or its current or former managers, parents, subsidiaries, partners, members affiliates, successors, predecessors and assigns, and any past and present employees, officers, directors, agents, representatives, trustees, attorneys, accountants and shareholders, each in its, his or her individual and representative capacities.

s.      Liquidated Damages:  The Parties agree that $1,000.00 per breach of Sections 9 (q) and (r) of this Agreement constitutes a reasonable estimation of opposing Party's damages in the event of breach of said Sections, that actual damages would be impracticable or extremely difficult to ascertain, and that the provision for liquidated damages hereunder does not constitute a penalty.  Each Party acknowledges that these damages have been specifically negotiated by the Parties and are, among other things, intended to compensate the other Party for harm or damage to its reputation and business goodwill.  Parties hereby agree that if he/it breaches Sections 9 (r) and (2) of this Agreement, he/it will pay to the other Party the liquidated damages set forth in this Section and that the other Party has a right to collect said amount.

INITIALS: _____
                    Sami Yonan

INITIALS: _____
                    Turnpike Lodges, Ltd.

[Signatures appear on Page 9]

8

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the day and year first above written.

DEFENDANT: TURNPIKE LODGES, LTD.              Date: May 20, 2008

By: _____
Print Name: ___ Thomas Patton ___
Its: ___ General Manager ___
Print Title: _____

APPROVED AS TO FORM AND CONTENT:            Date: April ___, 2008

_____
Martin H. Orlick, Esq.
Attorneys for Defendant Turnpike Lodges, Ltd.

PLAINTIFF: SAMI YONAN                          Date: May 6, 2008

_____
SAMI YONAN, an individual

APPROVED AS TO FORM AND CONTENT              Date: May 14, 2008

_____
Mark D. Potter, Esq.
Attorney for Plaintiff, Sami Yonan

9

LOF NO. 6949(bw) 64616-0004 4/2008

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the day and year first above written.

DEFENDANT: TURNPIKE LODGES, LTD.                Date: May 20, 2008

By: _____
Print Name: _____Thomas Patton_____
Its: _____General Manager_____
Print Title: _____

APPROVED AS TO FORM AND CONTENT:               Date: April ___, 2008

_____
Martin H. Orlick, Esq.
Attorneys for Defendant Turnpike Lodges, Ltd.

PLAINTIFF: SAMI YONAN                           Date: May April 6, 2008

_____
SAMI YONAN, an individual

APPROVED AS TO FORM AND CONTENT                Date: April ___, 2008

_____
Mark D. Potter, Esq.
Attorney for Plaintiff, Sami Yonan

9

**<u>EXHIBIT 4</u>**

ORIGINAL FILED

JAN 2 9 2007

LOS ANGELES
SUPERIOR COURT

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JOE MACK<br><br>     Plaintiff,<br><br>v.<br><br>CIENEGA VENTURES, LLC, A California Limited Liability Company; KOI RESTAURANT, A Business Entity Form Unknown, and DOES 1 through 10, inclusive<br><br>     Defendant | Case No.: BC344244<br><br>[proposed] ORDER GRANTING PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY FEES |

On January 10, 2007, this Court presided over the plaintiff's motion for an award of attorney fees.  During the course of the case, the defendant offered and the plaintiff accepted a section 998 offer of compromise.  Pursuant to the terms of that 998 stipulated judgment, the defendant agreed to pay all reasonable attorney fees, the amount to be determined by way of noticed motion.  Plaintiff is, therefore, entitled to reasonable attorney fees.

-1-

130940

The Court finds attorney Mark Potter's rate of $295 per hour and attorney Russell Handy's rate of $250 per hour to be reasonable. Ms. Poynter's requested rate of $200 per hour was not supported by the record and, in light of the plaintiff's concession, the Court finds that $100 per hour for Ms. Poynter is reasonable.

It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court.... [Citations.] The value of legal services performed in a case is a matter in which the trial court has its own expertise. Melvyn v. Robledo (1976) 64 Cal.App.3d 618, 623-624, 134 Cal.Rptr. 602. Plaintiff has, by way of his reply, conceded that some of the items presented are not recoverable, or improperly described, and agreed to reduce his request. The Court will address the remaining disputed items.

Defendant objects to the $1,325 billed by Handy on 11/21/2005 on the basis that the description is inadequate and fails to justify the travel time from San Diego to Los Angeles to inspect records.   The Court does not find that this time is inadequately documented. Defendant may be objecting to the fact that the billing item begins with the word "Traveled" implying that an entire 5.3 hours was spent driving from San Marcos to Los Angeles. This argument does not make sense, and the rest of the item gives sufficient detail for the Court to assess the cost, and conclude that it is reasonable.

The defense also objects to the billing entries dated 6/28/06, 7/10/06, 7/31/06, 8/16/06, on the basis that they constitute impermissible "block billing" entries.  The Court does not find that these items are impermissible "block billing."  Usually, block billing implies a single cost item that covers a longer span of time than a few hours, as is the case here – for example, an item that claims for a general charge ("trial research") covering a period of days or months. These billing entries involve a single sitting on a related task, are sufficiently described and appear reasonable.

1    Defendant also argues that the plaintiff should not recover any of the costs

2 sought in this fee motion for failure to comply with CRC 870(a)(1), which is now CRC

3 3.1700(a).   Defendant has failed to cite the revised code section. In addition, the

4 citation ignores C.C.P. § 1032(c), under which the parties may stipulate to alternative

5 deadlines and procedures for requesting attorneys' fees. Defendant did so stipulate to

6 allow Plaintiff to submit costs by way of a noticed motion rather than a verified cost

7 memorandum.

8

9    Plaintiff's Motion is **GRANTED**; fees and costs are awarded in the total amount

10 of $20,813.50.

11

12 Dated: ___**JAN 2 9 2007**___            ___ROLF M. TREU___

13                                          Los Angeles Superior Court Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 5**

1

2

3

4

5

6

7

F I L E D
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

FEB - 1 2007

By _____
Deputy

8

9

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN BERNARDINO

10

11   ROBERT D. MILLER,                    )   Case No.: SCVSS126644
                                          )
12             Plaintiff,                 )   [Proposed] ORDER GRANTING
                                          )   ATTORNEY FEES
13   v.                                   )
                                          )
14   K & SHAFI, INC., A California        )
     Corporation; FREDERICK M.            )
15   TRIVISONNO, and DOES 1 through 10,   )
     inclusive                           )
16                                        )
             Defendants.                  )
17                                        )
                                          )
18   _____)

19

20        On January 25, 2007, this Court presided over the plaintiff's motion for an award

21   of attorney fees.  During the course of the case, the defendant offered and the plaintiff

22   accepted a section 998 offer of compromise.   Pursuant to the terms of that 998

23   stipulated judgment, the defendant agreed to pay all reasonable attorney fees, the

24   amount to be determined by way of noticed motion.  Plaintiff is, therefore, entitled to

25   reasonable attorney fees.

26

27

28

-1-

COPY

1    The Court finds attorney Mark Potter's rate of $295 per hour, attorney Russell

2    Handy's rate of $250 per hour, and attorney Poyner's rate at $200 per hour to be

3    reasonable market rates.

4

5    While the Court does over rule most of the defense arguments, it does have a

6    problem with the billing associated with a failed motion to compel the deposition of the

7    defendant.  That motion was premature and ill-advised at the time.  The Court deducts

8    the work done on that motion and associated court hearing.

9

10    Plaintiff's Motion is GRANTED; fees and costs are awarded in the reduced

11    amount of $8,459.00.

12

13    Dated: __FEB 0 1 2007__          __FRANK GAFKOWSKI, JR.__

14                                     San Bernardino Superior Court Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

Attorney Fees                                                    SCVSS126644

**<u>EXHIBIT 6</u>**

Priority ___X___
Send ___X___
Enter ___X___
Closed _____
JS-5/JS-6 ___NO___
JS-2/JS-3 _____
Scan Only _____

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No.   CV 04-3831 (PLAx)                                    Date   March 3, 2006

Title   PAT GROVE v. JUAN DE LA CRUZ, PATRICIA DE LA CRUZ, dba Billy J's,
        FONTANA SIERRA CORPORATION, a California corporation, and DOES 1 through
        10, inclusive.

Present: The Honorable   CHRISTINA A. SNYDER

| CATHERINE JEANG | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:               Attorneys Present for Defendants:

Not Present                                     Not Present

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

**Proceedings:**   **(IN CHAMBERS): PLAINTIFF'S MOTION FOR AN AWARD OF
                    ATTORNEY FEES** (filed November 16, 2005)

## I. INTRODUCTION AND BACKGROUND

On May 28, 2004, plaintiff Pat Grove filed suit against Juan De La Cruz and Patricia De La Cruz,
doing business as Billy J's Family Restaurant (collectively, "De La Cruz defendants"). On October 26,
2004, De La Cruz defendants filed a third party complaint for indemnity, apportionment and
contribution, and declaratory relief, against Fontana Sierra Corporation, the owner of the property on
which De La Cruz defendants run Billy J's Family Restaurant ("the restaurant"). Plaintiff filed a first
amended complaint on January 19, 2005, naming Fontana Sierra Corporation as a defendant in addition
to De La Cruz defendants. Plaintiff alleges the following claims for relief: (1) violation of the
Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.; (2) violation of the Unruh
Civil Rights Act, Cal Civ. Code § 51; (3) violation of common law unfair competition law; (4)
negligence; (5) negligence per se; and (6) declaratory relief.

On September 31, 2005, plaintiff filed a motion for summary judgment as to De La Cruz
defendants. By order dated October 31, 2005, the Court dismissed plaintiff's ADA claim and request for
injunctive relief as moot, and granted summary judgment in favor of plaintiff as to the remaining state
law claims. The Court therefore entered judgment in favor of plaintiff against De La Cruz defendants in
the amount of $4000.

Plaintiff filed the present motion for an award of attorneys' fees against De La Cruz defendants
on November 16, 2005. De La Cruz defendants filed a preliminary opposition on January 4, 2006, in
which they indicated that they were unable to determine what portion of a settlement payment by
Fontana Sierra Corporation was for plaintiff's attorneys' fees. Accordingly, by order dated January 5,
2006, the Court: (1) directed plaintiff to provide to De La Cruz defendants either a copy of the settlement
agreement with Fontana Sierra Corporation or a statement as to what portion of the settlement is
attributable to attorneys' fees, (2) vacated the January 9, 2006 hearing on plaintiffs' motion for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-3831 (PLAx) | Date | March 3, 2006 |
|----------|-------------------|------|---------------|

| Title | PAT GROVE v. JUAN DE LA CRUZ, PATRICIA DE LA CRUZ, dba Billy J's, FONTANA SIERRA CORPORATION, a California corporation, and DOES 1 through 10, inclusive. |
|-------|------|

attorneys' fees and took the matter under submission, and (3) set a briefing schedule for the parties to file their supplemental briefs.  On January 17, 2006, De La Cruz defendants filed a Supplemental Opposition, and on January 20, 2006, plaintiff filed a Supplemental Reply.   Plaintiff filed an Amended Supplemental Reply on January 20, 2006.  Plaintiff's motion for attorneys' fees is presently before the Court.

**II. DISCUSSION**

### A. Reasonable Attorneys' Fees

Plaintiff argues that as the prevailing party, she is entitled to an award of her reasonable attorneys' fees, totaling $12,003.50,[1] pursuant to California Civil Code § 52.  Mot. at 1; Declaration of Mark D. Potter ("Potter Decl.") Ex.1 (Billing Statement).  Where fee awards are appropriate and available, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  The Court has an independent duty to determine whether the hours and hourly rate submitted by the fee applicant are "reasonable," and to reach its own "lodestar" value.  The lodestar amount is "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." Id. at 433.

The Court must first exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." Van Gerwen v. Guarantee Mutual Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (citation and internal quotation marks omitted).  Then the Court "may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." Id.  In Hensley, the court set forth twelve factors that may be considered in determining both the lodestar value and the multiplier.[2]  The lodestar amount is "presumptively the reasonable fee amount," and should be adjusted upward or downward by a multiplier in "rare" or "exceptional" cases only.  Van Gerwen, 214 F.3d at 1045.

---

[1] Plaintiff seeks a total award of $12,398.50, $395 of which consists of costs, including a filing fee, service costs, and investigation costs.  See Declaration of Mark D. Potter, Ex.1 (Billing Statement).

[2] The twelve factors identified are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) whether accepting the case precluded the attorney from taking other work; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Hensley, 461 U.S. at 430 n.3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 04-3831 (PLAx) | Date | March 3, 2006 |

| Title | PAT GROVE v. JUAN DE LA CRUZ, PATRICIA DE LA CRUZ, dba Billy J's, FONTANA SIERRA CORPORATION, a California corporation, and DOES 1 through 10, inclusive. |
|---|---|

Plaintiff has submitted time records documenting the hours of attorney time expended in this litigation. The Court finds that this documentation is sufficient to meet plaintiff's burden of production and proof. The time record submitted indicates that plaintiff's counsel Mark D. Potter ("Potter") and Russell Handy ("Handy") worked a total of 50.3 hours on the case. Potter Decl., Ex.1 at 4. Potter worked 34.7 hours at $295 per hour, and Handy worked 15.6 hours at $250 per hour. Id. ¶¶ 4-5.

Although the Court determines that the hourly rates charged by plaintiff's counsel are reasonable, the Court concludes that it would be unreasonable to hold the De La Cruz defendants liable for the total number of hours claimed. According to the settlement agreement between plaintiff and Fontana Sierra Corporation, plaintiff has received up to $4000 in attorneys' fees for plaintiff's prosecution of the present case as to Fontana Sierra Corporation. To the extent that plaintiff incurred attorneys' fees prosecuting the present action against Fontana Sierra Corporation, plaintiff has therefore already been compensated. However, upon careful review of the billing statement submitted by plaintiff, it appears that some of the claimed fees relate to plaintiff's prosecution of the present action against both the De La Cruz defendants and Fontana Sierra Corporation. For example, plaintiff claims $1600 in fees incurred during Handy's April 13, 2004 visit to City Hall, to review the public records for the property on which the restaurant is located. Id. Ex.1 at 1. De La Cruz defendants cannot reasonably be held liable for fees plaintiff incurred prosecuting the present case as to Fontana Sierra Corporation.

Accordingly, the Court has carefully reviewed the billing statement submitted by plaintiff, and has totaled the entries that appear to relate to plaintiff's prosecution of this case solely as to the De La Cruz defendants. The Court excluded from its calculation, in full or in part, billing entries for the following dates in 2004, insofar as they appear to relate to plaintiff's prosecution of the present action against all defendants: April 13; May 19; June 17 and 24; July 1, 16, 27 and 30; August 2 and 12; September 2; October 15 and 28; November 4, 17, and 23; and December 1. The Court excluded from its calculation, in full or in part, billing entries for the following dates in 2005, insofar as they appear to relate to plaintiff's prosecution of the present action against all defendants: February 4, 11, 14 and 18; July 21 and 28; August 8, 17, 18, 25 and 30; and September 30. On the basis of the Court's calculations of the resulting lodestar amount, the Court concludes that plaintiff is entitled to reasonable attorneys' fees in the sum of $7,947.00 for plaintiff's prosecution of the present action against the De La Cruz defendants.

### B. Costs

In addition to reasonable attorneys' fees, plaintiff seeks a total of $395 in costs, including a $150 filing fee, $68 in service costs as to the De La Cruz defendants, and $177 in investigator costs for travel to, and taking of photographs at, the restaurant property. Id. Insofar as the filing fee and investigator costs appear to relate to plaintiff's prosecution of the present case as to all defendants, the Court finds it appropriate to divide such fees equally among the De La Cruz defendants and Fontana Sierra Corporation. Accordingly, the Court concludes that plaintiff is entitled to costs in the sum of $231.50,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 04-3831 (PLAx) | Date | March 3, 2006 |

| | |
|---|---|
| Title | PAT GROVE v. JUAN DE LA CRUZ, PATRICIA DE LA CRUZ, dba Billy J's, FONTANA SIERRA CORPORATION, a California corporation, and DOES 1 through 10, inclusive. |

which includes the $68 filing fee and $163.50 representing De La Cruz defendants' share of the filing fee and investigator costs.

**III. CONCLUSION**

In accordance with the foregoing, plaintiff's motion for attorneys' fees is hereby GRANTED. De La Cruz defendants are ordered to pay plaintiff a total of $8178.50 for reasonable attorneys' fees and costs.

IT IS SO ORDERED.

Initials of Preparer          00  :  00

**EXHIBIT 7**

## DECLARATION OF BOYD S. LEMON

I, Boyd S. Lemon, declare:

1. I have been retained by Mark Potter and Russell Handy as an expert witness in the within proceeding. I have personal knowledge of the facts set forth below, and if called and sworn as a witness herein would and could testify competently thereto. I make this Declaration in support of Plaintiff's Motion for Attorney's Fees.

2. I am and have been for more than 38 years an attorney duly licensed to practice law in the State of California. I have emphasized a wide variety of litigation in my practice, including civil rights litigation, and for the past 20 years have also emphasized attorney fee and retainer issues, legal malpractice, legal ethics and other attorney conduct matters. I have been the litigation department chair of three law firms, including one with more than 125 attorneys; and I have been on the executive committee of two of those firms and the managing director of one. As litigation department chair I was responsible for each firm's billings in litigation matters. In that capacity I have reviewed thousands of attorney's bills in litigation matters. I have been retained as an expert witness and/or consultant in more than 600 cases involving attorney conduct issues, with at least 200 of them involving issues of reasonable attorney's fees and have been qualified as an expert witness by the court in more than 70 cases, including cases in the Los Angeles Superior Court and the United States District Court for the Central District of California. My geographical area of practice has been throughout the State of California, but primarily in Los Angeles and Orange Counties. I have written and spoken extensively on attorney conduct issues. I am and have been for the past 10 years on the panel of arbitrators of fee disputes for both the State Bar and the Los Angeles County Bar, and in that capacity have arbitrated dozens of attorney fee disputes. As an attorney, I have represented both attorneys and clients

1  in numerous cases involving attorney fee disputes. I have also served on the State Bar

2  Disciplinary Committee, have been an arbitrator for the Los Angeles Superior Court and

3  Kaiser Permanente, and a Judge Pro Tempore in the Los Angeles Municipal Court. A

4  detailed description of my qualifications is attached hereto, marked Exhibit A and made

5  a part hereof.

6      3. I was given the assignment by Messrs. Potter and Handy to review their

7  qualifications and experience and opine as to what a reasonable hourly rate would be

8  for the legal services they rendered in trying and prevailing in the case of Rodriguez v.

9  Home Depot.

10      4. In reaching my opinion, I have considered the following factors: (a) the

11  extensive experience and qualifications of Messrs. Potter and Handy in ADA cases,

12  which I reviewed in a Declaration of Mr. Potter filed in another case; (b) the related

13  experience of both attorneys in their work in teaching and writing regarding the ADA

14  and related issues; they appear to be experts in this very specialized field; (c) their

15  experience in shaping the ADA law in a number of reported cases; (d) the hourly rates

16  of attorneys with comparable expertise in the practice in the Los Angeles area in

17  specialized fields, which I have observed in evaluating attorneys' bills in numerous

18  cases in the past 20 years, including more than 20 in the past three years; (e)

19  conversations I have had with colleagues in which they have informed me of their

20  hourly rates as recently as last month; (f) review from time to time of various

21  publications which publish attorney hourly rates in the Los Angeles area; (g) the fact

22  that Mr. Potter and Mr. Handy are in a small to medium sized law firm (attorneys in

23  larger firms tend to charge higher hourly rates); and (h) the success of Messrs. Potter

24  and Handy in obtaining a favorable verdict in this case.

25      5. In my opinion, reasonable and customary hourly rates for attorneys of more

26  than 10 years and 6 years experience respectively in a specialized field, considering the

27  factors set forth in Paragraph 4 above, are within the range of $290 to $320 per hour for

28  ///

1  Mr. Potter and $260 to $280 per hour for Mr. Handy.[1]

2      I declare under penalty of perjury under the laws of the State of California that

3  the foregoing is true and correct and that this Declaration was executed on March 3,

4  2004 at Marina Del Rey, California.

5

6                                          Boyd S. Lemon

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

     [1] Attorneys with their experience in a specialized practice such as ADA in large firms would
28  command hourly rates of $350 to $400.

# **PROOF OF SERVICE**

YONAN V. TURNPIKE LODGES, ET AL.        Case # CV07-0531CJCSHX

I, the undersigned, am over the age of eighteen years and am resident of San Diego County, California; I am not a party to the above-entitled action; my business address is 100 East San Marcos Blvd., Suite 400, San Marcos, California, 92069.

On May 30, 2008 I served the following document(s):

PLAINTIFF'S MOTION FOR ATTORNEYS FEES
POINTS & AUTHORITIES ISO MOTION
[PROPOSED] JUDGMENT

Addressed to:
Martin H. Orlick, Esquire
Matthew S. Kenefick, Esquire
JEFFER, MANGELS, BUTLER & MARMARO LLP
Two Embarcadero Center, 5th Floor
San Francisco, CA 94111

☐    <u>BY MAIL:</u> I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at San Marcos, California.

☐    <u>BY FACSIMILE:</u> In addition to the service by mail as set forth above, I forwarded a copy of said documents via facsimile to the listed facsimile number.

☐    <u>BY OVERNITE EXPRESS:</u> I caused such envelope with postage thereon fully prepaid to be placed in the Designated Overnite Express drop box at San Marcos, California.

✓    <u>BY PERSONAL SERVICE:</u> I caused said documents to be personally served on all listed recipients via Diversified Legal Services.

Executed on May 30, 2008 from San Marcos, California.

I declare under penalty of purjury under the laws of the State of California that the above is true and correct.

_____
Lauren Whitehead